# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**ANDREW M. McNEIL**
**PHILIP R. ZIMMERLY**
Bose McKinney & Evans, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**DANNY E. GLASS**
**ADAM E. GLASS**
Fine & Hatfield, PC
Evansville, Indiana

**ROBERT M. BAKER, III**
Law Office of Robert M. Baker III
Indianapolis, Indiana

**RONALD E. WELDY**
Weldy & Associates
Indianapolis, Indiana

FILED
Feb 20 2014, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CLARK'S SALES AND SERVICE, INC., | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1306-PL-552 |
| | ) | |
| JOHN D. SMITH and FERGUSON | ) | |
| ENTERPRISES, INC., | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy W. Oakes, Judge
Cause No. 49D13-1205-PL-20492

**February 20, 2014**

**OPINION – FOR PUBLICATION**

**CRONE, Judge**

## Case Summary[1]

Clark's Sales & Service, Inc. ("Clark's"), appeals the trial court's order denying Clark's motion for preliminary injunction as to a restrictive covenant Clark's sought to enforce against former Clark's employee, John D. Smith, and his new employer, Ferguson Enterprises, Inc. Smith worked for Clark's for approximately fourteen years before leaving to work for Ferguson. During his employment with Clark's, Smith signed an employment agreement which included a restrictive covenant/noncompetition provision. The trial court concluded that the restrictive covenant that Clark's drafted is overly broad and unreasonable, and therefore unenforceable. On appeal Clark's asserts that the trial court clearly erred when it concluded that the restrictive covenant is unreasonable and unenforceable. Clark's maintains that even assuming the restrictive covenant is unreasonable and unenforceable as written, this Court should apply the blue pencil doctrine to make the covenant reasonable and enforceable. Concluding that the trial court's judgment is not clearly erroneous and that the blue pencil doctrine is inapplicable under the circumstances presented, we affirm.

## Facts and Procedural History

Smith worked for HH Gregg Appliances and Electronics ("Gregg") for four years prior to commencing employment with Clark's in 1998. While working for Gregg, Smith became familiar with and sold high-end appliances. Clark's, a family-owned business since it was founded in 1913, is involved in builder-distributor appliance sales and service in

---

[1] We held oral argument on January 22, 2014 in Indianapolis. We commend counsel for the quality of their advocacy.

2

Indiana and concentrates its efforts in high-end appliance sales. Clark's generated approximately $750,000 in sales in 1986, when Bob Clark purchased the business from his parents, and he grew the business to a peak of $28 million in sales during the first decade of the 2000s. Clark's seeks to hire sales consultants with prior appliance experience, but does not consider its business to be similar to that of Sears, Lowes, or Gregg, which do business in a traditional retail setting offering low-end, middle, and high-end appliances. Smith acquired knowledge, skill, and information in connection with his employment as an appliance sales representative with Clark's.

In 2004, one of Clark's high-level managers left to join Gregg in a position that Clark's viewed to be a competitive role. As a result, in September 2004, Clark's asked Smith and other employees to sign a written employment agreement, which contained both a nondisclosure clause and a restrictive covenant. The restrictive covenant provides in relevant part as follows:

> 7. <u>Restrictive Covenants</u>. During the term of Employee's employment and this Agreement and for a period of two (2) years following the termination of Employee's employment, Employee agrees not to, directly or indirectly, whether individually or as a partner, shareholder, officer, director, employee, independent representative, broker, agent, consultant or in any capacity for any other individual, partnership, firm, corporation, company or other entity, engage in the following prohibited activities:
>
> …
>
> (C)    Solicit or provide, or offer to solicit or provide, services competitive to those offered by Employer, or those provided by Employee on behalf of Employer, to any business account or customer of Employer who was a business account or customer of Employer during the term of Employee's employment, including but not limited to any business account or customer serviced or contacted by Employee, or for whom

Employee had direct or indirect responsibility, on behalf of Employer within the 12-month period preceding the termination [of] Employee's employment or about whom Employee obtained Confidential Information;

(D)     Work in a competitive capacity for HH Gregg's in Indianapolis, Indiana, within the State of Indiana, or in any state or municipal corporation, city[,] town, village, township, county or other governmental association in which HH Gregg's does business, or for an individual partnership, firm, corporation, company or other entity providing services similar or competitive to those offered by Employer to the residential or commercial builder and remodeling business sectors during the term [of] Employee's employment with Employer, including but not limited to providing those services performed by Employee while employed by or working for Employer, within Marion County, Indiana, any county contiguous to Marion County, Indiana (including Hamilton County, Hancock County, Shelby County, Johnson County, Morgan County, Hendricks County, and Boone County), any county in Indiana in which Employer provided services or has at least one customer or client, the State of Indiana, or within a 50 mile radius of Employee's principal office with Employer.

(E)     Otherwise attempt to interfere with Employer's business or its relationship with its business accounts, consultants, customers, employees, vendors, or suppliers.

Appellant's App. at 27-28. Smith signed the employment agreement. Some employees signed an employee handbook, which contained a nondisclosure clause but not a restrictive covenant.

Smith was made an assistant store manager in 2009 at Clark's Castleton showroom. Smith's duties involved inside sales in the showroom and did not include visiting or calling on customers. Smith did not have assigned customers or a book of business of his own.

After approximately fourteen years working for Clark's, Smith tendered his

4

resignation on April 13, 2012.[2] Prior to tendering his resignation, Smith emailed copies of Clark's 2010 and 2011 monthly and quarterly sales bonus reports for all of Clark's sales personnel to his personal email account from his company email address, even though he was not authorized to do so. The reports contained information about all of the sales made by each of Clark's salespeople and included customer and builder contact information, the price of the materials sold, Clark's costs on those items, and Clark's profit margin on each sale. Smith provided this information to his attorney, but to no third parties.[3] On April 18, 2012, Smith accepted an offer of employment with Ferguson.

Ferguson was also in the business of high-end appliance sales and service, although it was principally engaged in the plumbing and lighting business. Smith currently works for Ferguson at its builder and designer showroom in Carmel as an appliance manager. The showroom is within a fifty-mile radius of Smith's former principal office with Clark's. Smith's employment does not involve direct sales, but does include the training of sales employees, coordinating with vendors, and assisting with service, installation, and delivery. Smith's position is salaried, and he is compensated for the overall growth of the department.

Clark Cutshaw, Ferguson's sales manager for the Indianapolis area, testified that the information contained in Clark's sales reports is of no value to Ferguson because Ferguson's

---

[2] The trial court's findings state that Smith worked for Clark's for twelve years. However, the record reveals that Smith began his employment in 1998 and terminated his employment in 2012, resulting in a fourteen-year employment relationship.

[3] Smith has returned these reports and, according to Clark's, this confidential information, submitted as Plaintiff's Exhibits 28-83, was sealed by the trial court pursuant to Indiana Code Sections 5-14-3-4(a)(4) and 24-2-3-6. Appellant's Br. at 6 n.3.

corporate office dictates cost and pricing. He further testified that Smith was expected to develop close relationships with building and remodeling contractors, but had no direct selling responsibilities. John Hoover, Ferguson's general manager for the central Indiana area and Cutshaw's boss, testified that appliances constituted only one percent of Ferguson's sales to customers and that he was trying to increase those sales. He testified that he expected Smith to "[close] the loop" with Ferguson's customers on appliance sales. Tr. at 354. In other words, Smith was expected to convince builders, remodelers, and kitchen designers who had not previously done so to purchase appliances from Ferguson.

Although Smith claimed that he had no direct sales responsibility, he confirmed that he worked on landing sales through focusing on builder and remodeler referral sources, and then allowed a salesperson to complete the actual sale. While working for Ferguson, Smith has solicited and offered to provide competitive services to business accounts and customers of Clark's.

On June 1, 2012, Clark's filed an amended verified complaint for preliminary and permanent injunctive relief and compensatory damages against Smith and Ferguson based upon Smith's alleged violation of the nondisclosure provision and the restrictive covenant in the employment agreement. Smith and Ferguson responded with affirmative defenses and also counterclaimed for damages. Specifically, Smith and Ferguson asserted that Clark's first breached the employment agreement when it failed on multiple occasions to properly pay salary and bonuses to Smith, and therefore Clark's forfeited any right to enforce the agreement. A preliminary injunction hearing was held on June 8, 2012. Thereafter, on July

6

3, 2012, the trial court issued its findings of fact and conclusions thereon, granting Clark's request for a preliminary injunction based upon the terms of the nondisclosure provision in the employment agreement and denying in part Clark's request for a preliminary injunction as to the restrictive covenant in the agreement. The trial court's denial of the preliminary injunction regarding the restrictive covenant was based on its conclusion that the provision was not supported by adequate consideration.

Clark's appealed, and on March 8, 2013, another panel of this Court issued a memorandum decision reversing the trial court's conclusion regarding the restrictive covenant and holding that the promise to continue Smith's at-will employment was adequate consideration to support the covenant. *See Clark Sales & Serv., Inc. v. Smith*, No. 49A04-1208-PL-387 (Ind. Ct. App. Mar. 8, 2013). However, because the trial court did not reach the factual issues of the reasonableness of the restrictive covenant, or Smith's claim that Clark's breached the employment contract first, we were left with an inadequate record from which to direct the entry of a preliminary injunction. *Id*., slip op. at 10. Accordingly, we remanded to the trial court for a determination of the remaining issues. *Id*.

Thereafter, on June 20, 2013, the trial court entered its second set of findings of fact and conclusions thereon, again denying Clark's request for preliminary injunction. Specifically, the trial court concluded in relevant part:

12.     The Restrictive Covenant in this case operates to prevent Smith from working directly or indirectly, in any capacity, for any other entity seeks [sic] to solicit or provide competitive services to any entity that was a customer of Clark's throughout the term of Smith's employment. If the Covenant had not mentioned the customer base, it would be overly broad and restrictive in that it would prevent Smith from working for any competitor, in any capacity

7

whatsoever. But the restriction to just the past customers of Clark's, spanning from 2004 to 2012 is also overly broad and[] unreasonable.

13. It has long been settled in Indiana courts that present customers are a protectable interest of an employer, [*Donahue v. Permacel Tape Corp.*, 234 Ind. 398, 411, 127 N.E.2d 235, 240 (1955)], but the issue of past customers is less settled. The courts tend to be critical of restricting contact with past customers, and this Court agrees. When an ex-employee is restrained from serving a former customer of his ex-employer with whom he had no contact during the term of his employment, the reasonableness of the restraint as a device for protection of customer relationships is highly questionable. [*Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 213-14 (Ind. Ct. App. 1982)].

14. The Restrictive Covenant here forbids Smith from indirectly or directly working in any capacity for an entity providing competitive services to a customer of Clark's between 2004 and 2012. Not only would it be overly burdensome and likely impossible to compile the list of every Clark's customer from that eight year period and determine which customers could be deemed customers of Smith himself, but it also would be entirely impractical and unreasonable. Notwithstanding Smith's suspicious behavior in emailing himself the customer lists, the Restrictive Covenant on its face is overly broad and cannot stand.

15. An Indiana court may not craft a reasonable restriction out of an unreasonable one under the guise of interpretation. [*Licocci v. Cardinal Assocs., Inc*, 445 N.E.2d 556, 561 (Ind. 1983)]. However, if a covenant is clearly separated into parts, some of which are reasonable and some of which are not, the covenant may be divided according to the "blue-pencil" doctrine. *Seach*, 439 N.E.2d at 213. This Court looks to *Seach* here, where a covenant restricted the former employee from contacting "present, past, and prospective clients." *Id*. at 214. The *Seach* court severed the terms "past" and "prospective" from the covenant, leaving behind a restriction on contact with present clients, since they are widely considered a protectable interest. *Id*. at 215 (referencing *Permacel Tape*).

16. The Restrictive Covenant in front of this [C]ourt does not contain any qualifiers on the customers in question, such as "past" or "present," and only refers to those past customers of Clark's from 2004-2012 and, therefore, cannot be severed so as to maintain enforceability. Because the scope of [the] Covenant is unreasonably broad and no provisions can be stricken, the entire Covenant is unenforceable.

17.     Given the egregious level of Smith's pre-departure act of misusing Clark's confidential information, this Court finds it disconcerting that Smith will continue his employment at Ferguson. Regretfully, however, the Court finds the Restrictive Covenant unenforceable for unreasonableness of scope.

18.     Because the Restrictive Covenant is unenforceable, it is unnecessary for this Court to address whether Clark's materially breached the contract first, the tolling provision of the Restrictive Covenant, or the no-defense clause of the Covenant.

19.     Clark's has not demonstrated a reasonable likelihood of success at trial with regard to reasonableness of the Restrictive Covenant; therefore this Court DENIES Plaintiff's Motion for Preliminary Injunction. This Court now files these Special Findings of Fact and orders that they be made a part of the record in this cause.

Appellant's App. at 15-17. This appeal followed.

## Discussion and Decision

## Standard of Review

Clark's appeals the trial court's denial of its motion for preliminary injunction. We review the trial court's denial of a request for a preliminary injunction for an abuse of discretion. *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 171-72 (Ind. Ct. App. 2008). To obtain a preliminary injunction, the moving party has the burden to show by a preponderance of the evidence: (1) a reasonable likelihood of success at trial; (2) the remedies at law are inadequate; (3) the threatened injury to the movant outweighs the potential harm to the nonmoving party from the granting of an injunction; and (4) the public interest would not be disserved by granting the requested injunction. *Apple Glen Crossing, LLC v. Trademark Retail, Inc.*, 784 N.E.2d 484, 487 (Ind. 2003). If the movant fails to prove

any one of these requirements, the trial court's grant of an injunction would be an abuse of discretion. *Id*.

When considering whether to grant a preliminary injunction, the trial court is required to make special findings of fact and conclusions thereon. *Pathfinder Commc'ns Corp. v. Macy*, 795 N.E.2d 1103, 1109 (Ind. Ct. App. 2003); Ind. Trial Rule 65(D). On appeal, we must determine whether the evidence supports the trial court's findings, and whether the findings support the judgment. *Id*. We will not disturb the findings or judgment unless they are clearly erroneous. *Id*. We neither reweigh the evidence nor reassess witness credibility, but consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id*. Also, the power to issue a preliminary injunction should be used sparingly, with such relief granted only in rare instances in which the law and facts are clearly within the movant's favor. *Gleeson*, 883 N.E.2d at 172.

**Enforceability of the Restrictive Covenant**

The parties raise several issues that bear on Clark's first hurdle to obtain a preliminary injunction, the reasonable likelihood of Clark's success at trial. The dispositive issues are: (1) whether the restrictive covenant protects a legitimate interest; and (2) whether the restrictive covenant is reasonable in scope as to the time, activity, and geographic area restricted.

"Covenants not to compete are contractual provisions which might be described as step-children of the law." *Seach*, 439 N.E.2d at 211. Our supreme court has long held that noncompetition covenants in employment contracts are disfavored in the law, and we will

10

construe these covenants strictly against the employer and will not enforce an unreasonable restriction. *Cent. Indiana Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 728-29 (Ind. 2008). Indeed, "[p]ost-employment restraints are scrutinized with particular care because they are often the product of unequal bargaining power and because the employee is likely to give scant attention to the hardship he may later suffer through loss of his livelihood." RESTATEMENT (SECOND) OF CONTRACTS, § 188 cmt. G (1981). In order for a noncompetition agreement to be enforceable it must be reasonable, and such reasonableness is a question of law. *Krueger*, 882 N.E.2d at 729. In arguing the reasonableness of a noncompetition agreement, the employer must first show that it has a legitimate interest to be protected by the agreement. *Id*. Second, the employer bears the burden to show that the agreement is reasonable in scope as to the time, activities, and geographic area restricted. *Id*.

### Section 1 – Legitimate Interest

As to the first factor of reasonableness, in order "[t]o demonstrate a legitimate protectable interest, 'an employer must show some reason why it would be unfair to allow the employee to compete with the former employer.'" *Pathfinder Commc'ns Corp.*, 795 N.E.2d at 1110 (citation omitted). Indeed, "the employee should only be enjoined if he has gained some advantage at the employer's expense which would not be available to the general public." *Norlund v. Faust*, 675 N.E.2d 1142, 1154 (Ind. Ct. App. 1997), *clarified on reh'g*, 678 N.E.2d 421, *trans. denied*. Our courts have held that "the advantageous familiarity and personal contact which employees derive from dealing with an employer's customers are elements of an employer's 'good will' and are a protectible interest which may justify a

11

restraint.…" *Krueger*, 882 N.E.2d at 729. "Goodwill includes secret or confidential information such as the names and addresses of customers and the advantage acquired through representative contact." *Unger v. FFW Corp.*, 771 N.E.2d 1240, 1244 (Ind. Ct. App. 2002). In addition, "in industries where personal contact between the employee and the customer is especially important due to the similarity in product offered by the competitors, the advantage acquired through the employee's representative contact with the customer is part of the employer's good will, regardless of whether the employee has access to confidential information." *Gleeson*, 883 N.E.2d at 173.

Regarding this factor, the evidence supports the trial court's finding that Clark's established that, during Smith's fourteen-year employment with Clark's, Smith had the advantage of having been part of Clark's efforts to build goodwill with its business accounts and referral network of home builders, remodelers, and kitchen designers, and that such advantage is not available to a person in the general public. Appellant's App. at 12. As Clark's further described during oral argument, Clark's has an interest in protecting its unique "brand" in the industry. We agree with Clark's and the trial court that such goodwill is a legitimate protectable interest.[4]

### Section 2 – Reasonableness of Restrictions

Next, Clark's has the burden to establish that the restrictive covenant is reasonable in scope as to the time, activities, and geographic area restricted. The parties agree that the two-

---

[4] Although the trial court did not specifically conclude that Clark's had met its burden to show a legitimate protectable interest, both parties appear to agree that the trial court implicitly concluded as much.

year time restriction in the covenant is reasonable and valid. The parties disagree, however, as to the reasonableness of the noncompetition covenant as to scope of activities and geographic area restricted. We find the covenant unreasonable as to both.

### Section 2.1 – Scope of Activities

Paragraph 7(C) of the restrictive covenant prohibits Smith from providing "services competitive to those offered by [Clark's], or those provided by [Smith] on behalf of [Clark's]" to anyone who was a customer of Clark's during the term of Smith's employment. *Id*. at 28. First, regarding the customer base sought to be protected, as written, this restriction prohibits Smith from providing any service competitive to those offered by Clark's and applies to every customer of Clark's during Smith's fourteen-year employment. Indeed, as noted by Smith, this restriction enjoins Smith from providing services "to someone who may have been a customer of Clark's fourteen (14) years earlier and never returned to the business after that first time …." Appellees' Br. at 18. This restriction applies to all customers of Clark's during the term of Smith's employment and applies regardless of whether Smith had any contact whatsoever with those customers.

This Court has held that although present customers are a protectable interest of an employer, a contract prohibiting contact with any past or prospective customers, no matter how much time has elapsed since their patronage ceased, was vague and too broad. *Seach*, 439 N.E.2d at 214. While any customer of Clark's during Smith's fourteen-year employment

13

may arguably be considered a present customer of Clark's,[5] the impossibility of enforcement for the broad restriction contained in 7(C) cannot be overlooked, as it is unlikely that the expansive customer base referenced in 7(C) could be readily identified by either Clark's or Smith. Accordingly, we agree with the trial court's conclusion that Clark's attempt to protect a customer base spanning the entire term of Smith's employment is overly broad and unreasonable.

In addition to the overly broad customer base referenced, the scope of activities prohibited by paragraph 7(C) is also overly broad, as the activities prohibited are unrelated to the services Smith actually provided to Clark's during his employment. Rather, 7(C) prohibits Smith from providing any services competitive to "those offered by" Clark's. Appellant's App. at 28. For example, although Smith was an inside appliance salesman for Clark's, he would be prohibited from performing maintenance, repair, delivery, ordering, or pricing services, to name just a few, to anyone who was a customer of Clark's during his fourteen-year employment, because those services are competitive to services offered by Clark's. Presumably, assuming arguendo that Clark's sold snacks or beverages within its showroom, Smith would be prohibited from selling snacks or beverages for a new employer because that would be a service competitive to a service offered by Clark's. In such situation, "a former employee could easily violate the terms of the contract without knowing

---

[5] This Court has previously defined a "present" customer as one who did business with the employer during the employee's term of employment, a "past" customer as one who did business with the employer before the employee's term of employment, and a "prospective" customer as one whose business contacts occurred after the termination of the employee's employment. *See Hahn v. Drees, Perugini & Co.*, 581 N.E.2d 457, 460 n.3 (Ind. Ct. App. 1991).

14

he was doing so." *Seach*, 439 N.E.2d at 214. "A non-competition agreement drafted so broadly as to prohibit seemingly harmless conduct" may be unreasonable in view of all of the circumstances of a particular case. *Id.* Specifically, a covenant that restricts the employee from competing with portions of the business with which he was never associated is invalid. *Id.* Under the circumstances here, the "services competitive" restriction provided in 7(C) is overly broad, onerous, and an undue restriction on Smith's economic freedom. *See id.*

Paragraph 7(D) similarly prohibits Smith from working in a "competitive capacity" for Gregg or for any other individual or entity "providing services similar or competitive to those offered" by Clark's "during the term [of] [Smith's] employment with [Clark's] including but not limited to providing those services performed by [Smith] while employed by or working for [Clark's] …." Appellant's App. at 28. As in paragraph 7(C), this prohibition is not limited to restricting Smith from providing those services that he actually provided to Clark's. Instead, it includes but is not limited to restricting him from providing the services he actually provided to Clark's for any entity that competes with Clark's or did compete with Clark's during his fourteen-year employment and, as such, is overly broad and unreasonable.[6]

---

[6] Smith and Ferguson point to paragraph 7(E) of the restrictive covenant as an unreasonable catchall provision because it broadly restricts Smith from "otherwise" attempting "to interfere" with Clark's business. Appellant's App. at 28. Notably, the trial court does not reference paragraph 7(E) in its judgment, and Clark's states, without explanation, that "paragraph 7(E) is not at issue in this case." Appellant's Reply Br. at 7. While it is unclear to us why paragraph 7(E) would not be implicated here, because we find the scope of activities restricted in other paragraphs of the covenant unreasonable, we need not further discuss paragraph 7(E).

15

**Section 2.2 – Geographic Area**

Paragraph 7(D) contains the covenant's geographic restriction and restricts Smith from working "in a competitive capacity" within a geographic area that extends to working for Gregg in any state in which Gregg does business, as well as working for any other entity providing services competitive to Clark's in Marion County, any county contiguous to Marion County, any county in Indiana in which Clark's has at least one customer, the State of Indiana, *or* within a fifty-mile radius of Smith's principal office with Clark's, which was in Castleton. As noted by the trial court, whether a geographic scope is reasonable depends on the interest of the employer that the restriction serves. *See Krueger*, 882 N.E.2d at 730. The trial court found that "[a]s one of the largest 'high end' appliance stores in the area, with over $1 million in sales each month, it is reasonable for individuals in the community to travel up to 50 miles to visit Clark's." Appellant's App. at 15. While we agree with the implication of the trial court's finding that a fifty-mile geographic restriction would have been reasonable due to Clark's prominence in the high-end appliance business, as written, the fifty-mile radius is in addition to, and not a limitation of, the much more expansive geographic restriction of this provision, which includes any state in which Gregg does business, the entirety of Indiana and any county in which Clark's has at least one customer. It is unquestionable that the expansive geographic scope referenced in paragraph 7(D) is unreasonable as written.[7]

---

[7] To the extent that it may be argued that the trial court found the covenant reasonable as written regarding the geographic area restricted, we specifically conclude that the evidence does not support such a finding because, as noted above, the fifty-mile radius is written as an addition rather than a limitation to the expansive geographic restriction provided.

16

**Section 3 – Blue Pencil Doctrine**

Even assuming that the restrictive covenant is overly broad and unreasonable as written, Clark's urges this Court to do what the trial court determined it could not: make the covenant reasonable and enforceable by applying Indiana's "blue pencil" doctrine. "When reviewing covenants not to compete, Indiana courts have historically enforced reasonable restrictions, but struck unreasonable restrictions, granted they are divisible." *Dicen v. New Sesco, Inc.*, 839 N.E.2d 684, 687 (Ind. 2005). This principle is known as the blue pencil doctrine. *Id*. If a court finds that portions of a noncompetition agreement are unreasonable, it may not create a reasonable restriction under the guise of interpretation, since this would subject the parties to an agreement that they have not made. *Gleeson*, 883 N.E.2d at 177 (citing *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 811 (Ind. Ct. App. 2000)). But, if the noncompetition agreement is divisible into parts, and some parts are reasonable while others are unreasonable, a court may enforce the reasonable portions only. *Id*. When blue-penciling, a court must not add terms that were not originally part of the agreement but may only strike unreasonable restraints or offensive clauses to give effect to the parties' intentions. *Id*.

> Clark's proposes the following blue pencil modification for paragraph 7(C):
>
> Solicit or provide, or offer to solicit or provide, services competitive to those offered by Employer, or those provided by Employee on behalf of Employer, to any business account or customer of Employer who was ~~a business account or customer of Employer during the term of Employee's employment, including but not limited to any business account or customer~~ serviced or contacted by Employee, or for whom Employee had direct or indirect responsibility, on behalf of Employer within the 12-month period preceding

17

the termination [of] Employee's employment or about whom Employee obtained Confidential Information.

Appellant's Br. at 15. First, we must agree with Smith and Ferguson that this revision does not strike a divisible portion of the broad restriction provided by paragraph 7(C). Contrary to Clark's contention, the scope of activities restriction provided in paragraph 7(C) is neither "divisible" nor "clearly separated into parts" nor written to include "severable terms." *See Licocci*, 445 N.E.2d at 561 ("[I]f the covenant is clearly separated into parts and some parts are reasonable and others are not, the contract may be held divisible."); *Seach*, 439 N.E.2d at 215 ("If the excessive restraint is severable in terms, it may be disregarded and the remaining part of the covenant enforced."). Rather, the restriction provided by paragraph 7(C) is written as an indiscrete whole. There is no clear separation of terms or clauses that were or could be intended to be excised from the whole without changing the entire meaning and import of the passage. As our supreme court has stated, we may enforce reasonable restrictions and strike unreasonable restrictions, "granted they are divisible." *Dicen,* 839 N.E.2d at 687. Paragraph 7(C) is indivisible and unreasonable as a whole, and the blue pencil doctrine is inapplicable.

Moreover, even were we to blue-pencil paragraph 7(C) as proposed by Clark's, such modification does nothing to remedy the overbreadth of the scope of activities prohibited. Smith would still be prohibited from providing "services competitive to those offered by [Clark's]" irrespective of what services Smith actually provided to Clark's during the term of his employment. Although Clark's suggested revision attempts to somewhat reduce the expansive customer base originally referenced, the revision does nothing to aid or explain

18

how it would be determined which customers Smith "serviced" and whether those services were limited to sales only. We remind Clark's that we cannot create a reasonable restriction under the guise of interpretation, as that would subject the parties to an agreement that they did not make. *Gleeson*, 883 N.E.2d at 177.

Clark's also suggests the following blue pencil modification for paragraph 7(D):

Work in a competitive capacity ~~for HH Gregg's in Indianapolis, Indiana, within the State of Indiana, or in an state or municipal corporation, city town, village, township, county or other governmental association in which HH Gregg's does business, or~~ for an individual, partnership, firm, corporation, company, or other entity providing services similar or competitive to those offered by Employer to the residential or commercial builder and remodeling business sectors during the term of Employee's employment with Employer, including but not limited to providing those services performed by Employee while employed by or working for Employer, within Marion County, Indiana, any county contiguous to Marion County, Indiana (including Hamilton County, Hancock County, Shelby County, Johnson County, Morgan County, Hendricks County, and Boone County), any county in Indiana in which Employer provided services or has at least one customer or client, the State of Indiana, or within a 50 mile radius of Employee's principal office with Employer.

Appellant's Br. at 18. As we concluded with the proposed modification for the preceding paragraph, this blue-penciling, which merely removes the reference to Gregg, also fails to adequately address the grossly overbroad restrictions. Although Clark's maintains that the scope of activities restricted by paragraph 7(D) is narrowly tied to Clark's protectable interest and is reasonably limited to Smith's actual duties for Clark's, this alleged reasonable limitation as to the scope of activities restricted appears nowhere in the language of the provision, modified or otherwise. Moreover, the mere removal of the reference to Gregg does not cure the remaining expansive geographic restriction of the covenant. In sum, the restrictions contained in paragraphs 7(C) and (D) are not clearly separated into divisible

19

parts, and Clark's proposed modifications result in restrictions that are still overly broad and excessive to protect Clark's legitimate interest.

In an attempt to persuade us that we should find the restrictive covenant properly divisible and enforceable pursuant to the blue pencil doctrine, Clark's directs us to *Welcome Wagon v. Haschert*, 125 Ind. App. 503, 508-09, 127 N.E.2d 103, 106 (1955), in which we applied the doctrine to delete overbroad language restricting the former employee from competing with the employer in any city in the United States where the employer rendered or had signified its intention to render services, and we enforced the remaining reasonable restriction that the former employee be prohibited from competing in Kokomo, the city where she had been employed. However, *Welcome Wagon* is distinguishable, as the restrictive covenant in *Welcome Wagon* was drafted significantly different than the covenant at issue here. In *Welcome Wagon*, the overbroad geographic restriction of the covenant was written in clearly separate and divisible clauses, and the "interdicted territory" was referenced separately rather than as "one indivisible whole." *Id.* Thus, we concluded that the overbroad restriction was divisible and the offending clauses could be stricken, requiring us merely to excise the two final clauses of the provision. *See id*.

Unlike *Welcome Wagon*, the blue-penciling proposed by Clark's is much more extensive and elaborate. Clark's is requesting us to redact sentence fragments from the indivisible whole of each contested paragraph while conveniently changing the entire

20

meaning and import of each paragraph.[8]   Moreover, as stated above, Clark's proposed

redactions do not adequately solve the overbreadth of the restrictions, and we would be

required to do additional redaction and engage in substantial interpretation to render the

restrictions reasonable.[9]   This is not the purpose of the blue pencil doctrine as we see it.

Indeed, an overriding theme of this case is that the parties advocate drastically

different philosophical approaches to the blue pencil doctrine.  Clark's insists that the broad

restrictive covenant here was drafted specifically with the blue pencil doctrine in mind,

assuming that a court would strike or remove any particular restriction in order to make the

covenant reasonable and enforceable.  Appellant's Br. at 15.  Clark's argues that this drafting

practice is permissible and merely the result of its "good faith effort to provide itself the

greatest level of protection allowed by law."   *Id*.   Smith and Ferguson find this approach

unsavory.  We agree, as the approach advocated by Clark's leads to great uncertainty in

contracting and does not promote good public policy regarding the relationship between

employees and prospective employers.  We remind Clark's that "Indiana law strongly

discourages employers' attempts to draft unreasonably broad and oppressive covenants."

*Product Action Int'l, Inc. v. Mero*, 277 F. Supp. 2d 919, 924 (S.D. Ind. 2003) (citing *Young v.

Van Zandt*, 449 N.E.2d 300, 304 (Ind. Ct. App. 1983)).

---

[8] We note that at no time has Clark's suggested that the entirety of either paragraph 7(C) or (D) be stricken.

[9] It became clear at oral argument that even counsel for Clark's was wavering and still negotiating as to how precisely the restrictive covenant could be blue-penciled to make it reasonable and enforceable.  The extreme effort Clark's is going through to alter the overbroad language of the covenant reminds us of an oft-quoted line from William Shakespeare's Hamlet: "[Clark's] doth protest too much, methinks."

In *Mero*, then-District Judge Hamilton, discussing Indiana's blue pencil doctrine, acknowledged the "reality of the problem and the power that employers usually hold over their current and former employees in cases of covenants not to compete" and how, as a practical matter, "such unreasonably broad contracts often have *in terrorem* effects on current and former employees." *Id*. at 931. Indiana courts will not engage in rewriting the covenant, as "the courts need not do for the employer what it should have done in the first place—write a reasonable covenant." *Id.* at 932. The consequence to employers for drafting such overreaching contracts is that the covenant cannot be enforced at all. *Id*. Judge Hamilton explained:

> The Indiana courts' refusal to rewrite agreements for parties can also be consistent with the parties' intentions. When an employer hands an employee an employment agreement with a covenant not to compete, the employee is of course entitled to consult a lawyer before signing the agreement. If the employer has drafted an unreasonably broad covenant, the employee should be entitled to rely on sound advice that the covenant is simply not enforceable under Indiana law. That employee's intent may well have been not to agree to *any* enforceable restriction. That same employee could sign quite happily a covenant, knowing that the courts would shred it.

*Id*. at 932 (footnote omitted). Judge Hamilton described the blue pencil doctrine as an imperfect, but sound and reasonable solution to the problem of overreaching: "It balances the employer's and employee's interests, gives the employer a fair opportunity to draft a reasonable and enforceable covenant, protects the employee by discouraging the employer from overreaching, and provides a rather mechanical but reasonably predictable answer in the case of overly broad covenants." *Id*.

Here, Clark's had a fair opportunity to draft a reasonable and enforceable restrictive covenant yet failed to do so. The overly broad and unenforceable covenant that Clark's did draft is not clearly separated into divisible parts or severable in terms such that we can mechanically strike unreasonable restrictions and enforce reasonable ones. The restrictions are unreasonable as a whole. Therefore, we conclude that the blue pencil doctrine is inapplicable, as it would subject the parties to an agreement that they did not make.[10] Accordingly, we agree with the trial court that Clark's has failed to establish by a preponderance of the evidence its likelihood of success at trial. The trial court's denial of Clark's motion for preliminary injunction is affirmed.

Affirmed.

BARNES, J., and PYLE, J., concur.

---

[10] Because we have determined that the restrictive covenant in the employment agreement is not, and cannot be made, reasonable and enforceable, we need not address Smith and Ferguson's arguments that Clark's previously committed a material breach of the employment agreement.