## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 11 2016, 5:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark D. Boveri
Krieg DeVault LLP
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

David R. Pruitt
Brian E. Casey
Barnes & Thornburg LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Janowiak,

*Appellant-Defendant,*

v.

Watcon, Inc.,

*Appellee-Plaintiff.*

August 11, 2016

Court of Appeals Case No.
71A04-1512-PL-2154

Appeal from the St. Joseph County
Superior Court.
The Honorable Steven Hostetler,
Judge.
Cause No. 71D07-1510-PL-353

**Friedlander, Senior Judge**

[1]     Michael Janowiak appeals the trial court's grant of a preliminary injunction enjoining him from soliciting orders from customers of his prior employer and from divulging any of his prior employer's confidential information. Concluding that the grant of the preliminary injunction was proper, we affirm and remand, in part, with instructions.

[2] Janowiak presents four issues for our review, which we consolidate, reorder, and restate as:

1. Whether the trial court erred in granting a preliminary injunction in favor of Watcon.
2. Whether the trial court erred in its conclusions.

[3] Watcon, Inc. is a company headquartered in South Bend that provides water treatment services and related products for industrial, commercial, and institutional customers. In late 1988, Janowiak began working for Watcon as a field engineer, providing sales and service to Watcon customers. On December 1, 1988, Janowiak and George Resnik, as President of Watcon, entered into a contract (the Agreement) which contains clauses regarding non-competition, confidentiality, and non-solicitation. Janowiak worked for Watcon from 1988 to September 1, 2015, with access to its customer list, customer contact information, customer order history, and price lists. He was also one of Watcon's most successful sales representatives, acquiring new accounts and increasing his sales each year.

[4] On September 1, 2015, Janowiak tendered to Watcon a letter terminating the Agreement between the two parties, effective September 15, 2015. Thereafter on September 1, 2, and 3, Janowiak performed his duties as a field engineer on Watcon's behalf soliciting and obtaining orders for Watcon products and services. On September 2, 2015, Watcon's attorney sent a letter to Janowiak and his attorney demanding that Janowiak return all of Watcon's equipment,

devices, and supplies as well as all other materials relating to Watcon's business by September 4, 2015.

[5] On September 8, 2015, Janowiak signed a Sales Employment Agreement with Momar, Inc., a Georgia corporation with a water treatment division called Aquatrol. Although executed on September 8, the agreement went into effect on September 1, 2015. Prior to hiring Janowiak, Momar was not selling Aquatrol products in the territory in which Janowiak had sold Watcon products. Upon commencing employment with Momar, Janowiak solicited business from some of his Watcon customers and sold to them Aquatrol products and services that directly compete with those of Watcon. At the injunction hearing, Janowiak stipulated to and testified that, as a sales representative for Momar, he has solicited customers that he previously serviced for Watcon. The evidence showed he had solicited at least eight of his Watcon customers since he had begun selling Aquatrol products and services in his employment with Momar. Janowiak further acknowledged that within two weeks of leaving Watcon, he was filling orders for Momar products for at least two companies he serviced as a representative of Watcon. He also testified that he would not stop soliciting orders for Momar products from Watcon customers unless court-ordered to do so.

[6] On October 16, 2015, Watcon filed a complaint against Janowiak for damages, preliminary injunction, and permanent injunction. A hearing was held on Watcon's request for a preliminary injunction on November 16, 2015. The parties submitted proposed findings and conclusions, and, on November 24,

2015, the court issued findings of fact and conclusions of law granting a preliminary injunction in favor of Watcon. This appeal ensued.

# 1. Preliminary Injunction

[7]     The grant or denial of a preliminary injunction rests within the sound discretion of the trial court, and appellate review is limited to whether there was a clear abuse of that discretion. *Apple Glen Crossing, LLC v. Trademark Retail, Inc.*, 784 N.E.2d 484 (Ind. 2003). In granting or refusing a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. *Barlow v. Sipes*, 744 N.E.2d 1 (Ind. Ct. App. 2001), *trans. denied*; Ind. Trial Rule 52(A). On appeal, we must determine if the findings support the judgment. *Barlow*, 744 N.E.2d 1. The findings or judgment shall not be set aside unless clearly erroneous. T.R. 52(A). Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Barlow*, 744 N.E.2d 1. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164 (Ind. Ct. App. 2008). Due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. T.R. 52(A). On appellate review, we consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Barlow*, 744 N.E.2d 1.

To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: (1) the movant lacks adequate remedies at law, thus causing irreparable harm pending resolution of the substantive action; (2) the movant has at least a reasonable likelihood of success at trial; (3) the threatened harm to the movant outweighs the potential harm to the nonmovant from the granting of an injunction; and (4) the requested relief is not contrary to the public interest. *Apple Glen Crossing, LLC*, 784 N.E.2d 484. If the movant fails to prove any of these requirements, the trial court's grant of an injunction is an abuse of discretion. *Id.* As to the requirements for a preliminary injunction to issue, Janowiak challenges only the trial court's determination that Watcon has a reasonable likelihood of success at trial.

# A. Likelihood of Success at Trial

Janowiak raises two issues that bear on the likelihood of Watcon's success at trial: (1) whether the Agreement is reasonable and (2) whether the Agreement is unenforceable because of a prior, material breach.

## (1) Reasonableness of Agreement

Covenants not to compete are in restraint of trade and are not favored by the law. *Gleeson*, 883 N.E.2d 164. These covenants are strictly construed against the employer and are enforced only if reasonable. *Id.* To be reasonable, the agreement's covenants (1) must protect legitimate interests of the employer and (2) must contain reasonable terms with regard to time, geography, and types of prohibited activity. *Id.* The employer bears the burden of showing that the

covenant is reasonable and necessary in light of the circumstances; that is, the employer must demonstrate that the employee has gained a unique competitive advantage or ability to harm the employer in order for the employer to be entitled to the protection of the noncompetition agreement. *Id.*

[11] The trial court concluded that Watcon has two legitimate, protectable interests in this case: customer relationships and confidential information, including "customer ordering preferences, product history and contact information." Appellant's App. pp. 10, 9 (Conclusion No. 1). Janowiak does not contest the trial court's determination that these are legitimate interests worthy of protection. Instead, he challenges the trial court's determination that the Agreement's terms are reasonable.

### (a) Paragraph 3

[12] Janowiak first argues that the terms of paragraph 3(A) of the Agreement are overbroad with regard to the type of activity prohibited. Paragraph 3(A) states:

> 3. The Seller further agrees:
>
> (A) To maintain in strict confidence all details, plans, formulas, lists of customers and other information pertaining to the Companys' [sic] business and technical data as may come to him by virtue of his efforts to sell the products of the Company and, in the event of the termination of this agreement, not to divulge the foregoing to any existing or prospective competitor of the Company and *not to act in any way as competitor of the Company in the territory granted unto him for a period of two years after such termination*.

*Id.* at 14 (emphasis added).  Janowiak claims that the italicized portion of paragraph 3(A) is overbroad because it prohibits him from working for a competitor of Watcon not just in sales and service but in *any* capacity.  We note, however, that except for the phrase "for a period of two years after such termination," the trial court struck this portion of paragraph 3(A), thereby eliminating the allegedly unreasonable terms.  Thus, we need not address this argument.

### (b) Paragraph 9

[13]  Janowiak also asserts that paragraph 9 of the Agreement is overbroad as to the type of activity prohibited because it forbids him to sell any products to customers of Watcon, including those not in competition with a product of Watcon.  Paragraph 9 provides:

> 9. The obligations imposed upon the Seller by Paragraph 2, and clause (A) of Paragraph 3 above, shall continue in effect regardless of the means or circumstances by which either this agreement or the active solicitation of orders in such territory may be terminated.  For a period of two (2) years after the termination of this agreement, by mutual consent or otherwise, the Seller promises that *he will not, directly or indirectly, solicit orders from the users of the Companys' [sic] products in said territory*, provided that, if the applicable law of such territory fixes a shorter period of restraint, such shorter applicable statutory limitation shall be deemed to fix the maximum limit of such restraint.

*Id.* at 16 (emphasis added).

[14]  In making this argument, Janowiak overlooks paragraph 2 of the Agreement, which is referenced in paragraph 9 and which provides:

2. The Seller will attempt to find purchasers in such territory for such water treatment, water softening and other mechanical devices for the treatment of water and other products of the Company and to promote the business of the Company in conformity herewith and not to sell in such territory competitive products or to promote businesses in competition with the products and business of the Company. *Nothing herein contained, however, shall be construed to prevent the Seller from selling and promoting products and business not competitive with those of the Company.*

*Id.* at 14 (emphasis added).

[15] We are mindful that contracts are to be read as a whole, and courts should construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless. *State Farm Fire and Cas. Co. v. Riddell Nat'l Bank*, 984 N.E.2d 655 (Ind. Ct. App. 2013), *trans. denied*. Further, courts should attempt to harmonize the provisions of a contract rather than interpret the provisions as conflicting. *Id.*

[16] Accordingly, when the italicized portion of paragraph 9 is read in conjunction with the italicized portion of paragraph 2, it is clear that the Agreement limits Janowiak, upon his departure from Watcon, from soliciting orders from Watcon's customers only for products that are in direct competition with the products sold by Watcon. This is a reasonable limitation on the type of activity in which Janowiak may engage in order to protect the legitimate interests of Watcon as determined by the trial court and unchallenged by Janowiak. Thus, the provision is reasonable and enforceable.

## (2) Prior Material Breach

[17] Janowiak next contends that Watcon is not reasonably likely to succeed at trial due to its prior, material breaches of the Agreement. After receiving all the evidence at the injunction hearing, the trial court determined that "Watcon has substantially complied with all the terms of the Watcon Agreement" and "Watcon did not materially breach the Watcon Agreement." Appellant's App. p. 9 (Finding No. 27), p. 10 (Conclusion No. 2). Janowiak challenges the trial court's Conclusion No. 2 and argues that Watcon breached by prematurely terminating the Agreement and by failing to pay Janowiak his commission.

[18] A breach by the employer may prevent enforcement of a noncompetition agreement. *Central Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723 (Ind. 2008). Such a breach, however, must be material. *Steve Silveus Ins., Inc. v. Goshert*, 873 N.E.2d 165 (Ind. Ct. App. 2007). A material breach is one that goes to the heart of the contract, and whether a breach is material is generally a question of fact for the trier of fact. *Id.*

[19] In support of his argument, Janowiak points to Watcon's demand that he return all company material and equipment by September 4, 2015. He maintains that this action by Watcon breached the Agreement by "effectively terminat[ing] it prematurely" because he could no longer perform his duties. Appellant's Br. p. 17. In addition, he contends that Watcon breached the Agreement by failing to pay him commissions he claims he is owed for the period of September 1-15, 2015.

[20] The evidence at the injunction hearing showed that on September 1, 2015, Janowiak tendered to Watcon a letter terminating the Agreement, effective September 15, 2015. Resnik testified that when he asked Janowiak what he was going to do upon his departure from Watcon, Janowiak responded that Resnik should contact Janowiak's lawyer. Resnik testified that this response "made [him] think that [Janowiak] was up to something, maybe going to work for a competitor." Tr. p. 20. In addition, Janowiak testified at the hearing that during his employment at Watcon, he had access to and developed confidential information for the company. This confidential information includes the name and contact information for the customer's contact person. Resnik testified that "one of the hardest things in our industry is to get an initial contact name, somebody to talk to at the business as you're going to get a potential customer" and that "sometimes it takes a couple years to even find out who the person is you've got to talk to." *Id.* at 16, 19. On September 2, 2015, Watcon's attorney sent a letter to Janowiak demanding the return of all company equipment, materials, and supplies by September 4, 2015. Resnik testified this action was taken due to Janowiak's unwillingness to discuss his future employment plans and his referral of all inquiries to his attorney. Janowiak testified that without this equipment, he was unable to perform his duties at Watcon and that Watcon had not paid him his commissions.

[21] The trial court made findings based upon and consistent with this evidence. *See* Appellant's App. pp. 5-6 (Finding of Fact Nos. 7-14). The court then concluded that Watcon did not materially breach the Agreement:

> [T]he Court finds, for purposes of the Motion for Preliminary Injunction, that Watcon did not materially breach the Watcon Agreement. Watcon's actions were appropriate under the circumstances. Janowiak chose not to honestly and openly discuss his intentions with Watcon. It was perfectly reasonable for Watcon to seek to protect its confidential information by demanding that Watcon's materials be immediately returned. Further, it is not unreasonable for Watcon to believe that Janowiak (who was not an employee) would end up owing to Watcon an amount greater than the amount of unpaid commissions. The Court also notes that the Momar Agreement was effective as of September 1, 2015, which is during the period for which Janowiak claims to be entitled to commissions from Watcon. That being said, the Court does not make any determination as to whether or not Janowiak may be owed such unpaid commissions from Watcon.

*Id.* at 10-11 (Conclusion No. 2).

[22] First, Janowiak has made no showing that these alleged breaches are material, which is a required element. Additionally, with regard to the unpaid commissions, the employment agreement between Janowiak and Momar was entered into evidence at the hearing. Although the agreement was executed on September 8, 2015, paragraph 3 of the agreement states that Janowiak's employment with Momar commenced on September 1, 2015, the day he gave his notice to Watcon and prior to the termination of his agreement with Watcon on September 15, 2015. Furthermore, Janowiak testified, and exhibits confirmed, that he submitted orders from Watcon customers for Momar/Aquatrol products on September 14, 2015. These events all occurred before Watcon allegedly failed to pay Janowiak his September commission.

[23] Second, we observe that paragraph 9 of the Agreement provides, "The obligations imposed upon the Seller by Paragraph 2, and clause (A) of Paragraph 3 above, shall continue in effect regardless of the means or circumstances by which either this agreement or the active solicitation of orders in such territory may be terminated." *Id.* at 16. Thus, upon termination of the Agreement by any means, Janowiak is to adhere to the non-compete and non-solicitation clauses. *See Krueger*, 882 N.E.2d 723 (where provision of contract called for survival of non-compete agreement despite termination of contract, Supreme Court held provision enforceable even in face of breaches by employer). The trial court's conclusion that Watcon did not materially breach the Agreement is not clearly erroneous.

[24] Furthermore, in light of the reasonableness of the terms of the Agreement and the trial court's conclusion that Watcon did not materially breach the Agreement, the trial court's conclusion that Watcon has proven a reasonable likelihood of success at trial is not clearly erroneous.

## B. Terms of Temporary Injunction

### (1) Addition of Terms

[25] Janowiak claims that in its preliminary injunction order the trial court added terms, thereby improperly expanding the parties' non-solicitation covenant. Specifically, in Paragraph 9, as set out above, Janowiak agreed to refrain from directly or indirectly soliciting orders from users (i.e., his Watcon customers).

In its order, the court enjoined Janowiak from taking any action to "solicit or *accept* orders" from Janowiak's Watcon customers. *Id.* at 12 (emphasis added).

[26] The trial court did not improperly expand the parties' agreement. The trial court's prohibition of Janowiak "accepting" orders is encompassed in the ban on his "indirect" solicitation of orders as agreed to by the parties in paragraph 9. Additionally, reading the contract as a whole as we are obliged to do, *see Riddell Nat'l Bank*, 984 N.E.2d 655, we observe that in paragraph 2 of the Agreement Janowiak agreed not to sell competitive products in his Watcon territory. So whether Janowiak accepts or solicits an order, the end result is the same: he is selling competitive products in his Watcon territory (and to his Watcon customers) in contravention of the Agreement. The trial court properly set forth the terms of the preliminary injunction and did not abuse its discretion.

[27] Janowiak also asserts that the trial court improperly added words to the Agreement by enjoining him from soliciting or accepting orders from his Watcon customers "for products and/or services that compete with the products and services provided by Watcon." Appellant's App. p. 13. Particularly, he contends the trial court's order inappropriately narrows the restriction set forth in paragraph 9 of the Agreement in which he promised to refrain from directly or indirectly soliciting orders from his Watcon customers in his Watcon territory.

[28] In a prior argument, Janowiak claimed that the terms of paragraph 9 were overbroad because the provision restricting the solicitation of sales is not limited

to sales of products competitive with Watcon. *See* Discussion Section 1.A.(1)(b), *supra*. There we concluded that if the Agreement was read as a whole, paragraphs 9 and 2 make it clear that the Agreement limits Janowiak from selling competing products and/or services to his Watcon customers. Thus, the court did not improperly add terms to the Agreement as a result of the language it used in its order. Rather, it properly stated the intent of the parties as evidenced by their Agreement, specifically paragraphs 9 and 2. The trial court did not abuse its discretion.

## (2) Insufficient Evidence

Next, Janowiak argues that the trial court improperly enjoined him from divulging Watcon's confidential information because there was no evidence that he had done so. As agreed to by the parties, the trial court enjoined Janowiak from divulging "any and all details, plans, formulas, lists of customers and other information pertaining to Watcon's business and technical data." Appellant's App. p. 13.

At the hearing on the preliminary injunction, Janowiak testified that during his tenure at Watcon, he had access to and developed confidential information for the company, including customer contact information and order history. He also testified that he considered that information to be valuable to Watcon and that he would not share the information with a competitor. He further testified, however, that once he began working for Momar, a competitor of Watcon, he targeted customers that he had previously serviced for Watcon and solicited orders from them using his "memory" and "previous knowledge." Tr. p. 95.

In addition, when asked whether he would continue to solicit his Watcon customers unless prohibited from doing so by the court, Janowiak replied, "Yes." *Id.* at 97. This evidence plainly shows that Janowiak revealed and utilized Watcon's confidential information — at the very least, Watcon's customer list. What's more, Janowiak testified that he would continue with such action until a court forbid him from doing so. We find no error in the trial court's order.

## (3) Trial Rule 65(D)

[31] Next, Janowiak maintains that the preliminary injunction issued by the trial court does not comply with Indiana Trial Rule 65(D). Trial Rule 65(D) requires that "[e]very order granting temporary injunction . . . shall be specific in terms." The trial court enjoined Janowiak from soliciting or accepting orders from any of his "53 Current Customers" at Watcon. Appellant's App. pp. 12-13. Janowiak asserts that the term "53 current customers" is not specific.

[32] At the injunction hearing, Watcon presented evidence of Janowiak's customers at the time he left the company. Resnik testified that, based upon Watcon's company records, Janowiak was servicing 53 customers at the time of his departure. At least seven of the 53 customers were specifically named at the hearing as having been solicited by Janowiak since his departure from Watcon. Similarly, Sean McMullen, Watcon's sales manager, testified that Janowiak had 53 active accounts that he was servicing at the time he left. This evidence was uncontested and supports Finding of Fact No. 20, which states:

20. Janowiak had 53 current active customers (the "53 Current Customers["]) on September 1, 2015. Those are the only customers for which Watcon is seeking a preliminary injunction. Watcon has a legitimate interest in the ongoing business with the 53 Current Customers, and that interest is protectable.

*Id.* at 7. Finding No. 20, in turn, supports Conclusion of Law No. 2, which states, in part: "Watcon has a protectable interest in the 53 Current Customers." *Id.* at 10. From our review of the transcript it appears that everyone understood the identity of the 53 customers. Janowiak neither presented evidence disputing Watcon's evidence of 53 active customers at the injunction hearing, nor expressed an inability to identify the 53 customers or addressed the issue with the trial court by asking for clarification of its injunction order.

[33] Nevertheless, Indiana Code section 34-26-1-9 (1998) permits "[u]pon the granting or continuing of an injunction, such terms and conditions may be imposed upon the party obtaining the injunction that are considered equitable." Although the trial court did not abuse its discretion in using the term "53 Current Customers" in its injunction order, by utilizing this statute, the injunction order can be clarified for all the parties involved. Therefore, the trial court is to order Watcon, pursuant to this statute, to submit a verified statement identifying the 53 customers that were Janowiak's current customers at the time he left his employment with Watcon. The trial court is further ordered to clarify its injunction order utilizing the verified statement provided by Watcon. *See, e.g., Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803 (Ind. Ct. App.

2000) (upon issuing injunction against former employee to enforce noncompetition agreement, trial court acted within its discretion in ordering, post-judgment, former employer to submit list of customers to clarify injunction and apprise former employee of customers not to be solicited for duration of injunction).

# 2. Conclusions of the Trial Court

## A. Ambiguous Term

[34] Janowiak additionally asserts that the term "users" in paragraph 9 is overbroad and unenforceable, thereby challenging the trial court's Conclusion of Law No. 2, which states: "The Court is not persuaded that the term "user" is ambiguous. The intent of the parties seems clear. They intended to protect Watcon from Janowiak competing with respect to then-current actual customers of Watcon at the time Janowiak's relationship with Watcon terminated." Appellant's App. p. 10.

[35] The court's Finding of Fact No. 20 supports its Conclusion of Law No. 2. Finding of Fact No. 20 states: "Janowiak had 53 current active customers (the "53 Current Customers["]) on September 1, 2015. Those are the only customers for which Watcon is seeking a preliminary injunction. Watcon has a legitimate interest in the ongoing business with the 53 Current Customers, and that interest is protectable." *Id.* at 7.

[36] In turn, the evidence supports Finding of Fact No. 20. The parties' understanding of the term "users," as employed in paragraph 9 of the Agreement, was revealed during Janowiak's cross-examination of Resnik:

> JANOWIAK'S COUNSEL: If I ask you to identify the users of Watcon's products and services as used in that sentence, would your answer be to give me a list of names of customers?
>
> RESNIK: Yes.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

> JANOWIAK'S COUNSEL: One of the things that you testified about on cross-examination was the customers in his territory, and I take it that the purpose of this case is to try and preserve those relationships, right, for Watcon?
>
> RESNIK: Yes.
>
> JANOWIAK'S COUNSEL: You don't want Mr. Janowiak to go out and take over those relationships or interfere with them to the extent they already exist between Watcon and a customer in his territory, right?
>
> RESNIK: Yes.

Tr. pp. 51, 53.

[37] Watcon does not seek to prohibit Janowiak from soliciting all of its customers – just those with whom Janowiak did business. Thus, the trial court's conclusion that the term "users" in paragraph 9 of the Agreement means customers of Janowiak's at the time he terminated his relationship with Watcon is not clearly erroneous. *See Field v. Alexander & Alexander of Ind., Inc.*, 503 N.E.2d 627 (Ind. Ct. App. 1987) (holding that the term "any customer," in the absence of explicit

language to the contrary, should be confined to the employer's customers when the employee was terminated), *trans. denied*.

# B. Blue Pencil Doctrine

[38] Finally, Janowiak challenges the trial court's application of the blue pencil doctrine to a portion of paragraph 3(A). Indiana's blue pencil doctrine allows courts of this State, when reviewing covenants not to compete, to enforce reasonable restrictions of covenants and strike unreasonable restrictions, as long as they are divisible. *Clark's Sales & Serv., Inc. v. Smith*, 4 N.E.3d 772 (Ind. Ct. App. 2014), *trans. denied*. When employing this doctrine, a court must not add terms that were not part of the agreement; rather, the court may only strike unreasonable terms or clauses in order to give effect to the parties' intentions. *Id.* Courts must be mindful not to use the blue pencil doctrine to create a reasonable restriction under the guise of interpretation, as this would subject the parties to an agreement they have not made. *Id.*

[39] Here, in its Conclusion of Law No. 2, the trial court severed a portion of paragraph 3(A) by applying the blue pencil doctrine. Although set out previously in this opinion, for ease of reference we reproduce the terms of Paragraph 3(A) here.

> 3. The Seller further agrees:
>
> (A) To maintain in strict confidence all details, plans, formulas, lists of customers and other information pertaining to the Companys' [sic] business and technical data as may come to him by virtue of his efforts to sell the products of the Company *and, in the event of the termination of this agreement, not to divulge the*

*foregoing to any existing or prospective competitor of the Company and*
*not to act in any way as competitor of the Company in the territory*
*granted unto him* for a period of two years after such termination.

Appellant's App. p. 14 (emphasis added). The italicized portion was struck by the trial court pursuant to the blue pencil doctrine. We note that by utilizing this doctrine, the court struck a clause that defined too broadly the type of activity from which Janowiak is restricted upon terminating his employment with Watcon. Janowiak, in fact, argued that this very clause is overbroad. *See* Discussion Section 1.A.(1)(a), *supra*. Janowiak now claims the court's use of this doctrine creates a two-year restriction to which the parties did not agree.

[40] Contrary to Janowiak's contention, the covenant as originally written and agreed upon by the parties, limited his disclosure of Watcon's confidential information for a period of two years. A portion of the covenant struck by the trial court stated that Janowiak agreed that "in the event of the termination of this agreement, not to divulge the foregoing . . . ." Appellant's App. p. 14. The term "foregoing" refers back to the first sentence of the covenant listing the items to be kept confidential as Watcon's "details, plans, formulas, lists of customers and other information pertaining to [ ] business and technical data." *Id.* This part of the covenant remains intact. Moreover, the two-year limitation refers not only to the latter part of the clause prohibiting Janowiak from acting as a competitor of Watcon, as Janowiak argues, but also to the former part of the clause listing the items to be kept confidential. This is indicated by use of the conjunction "and." Consequently, even prior to the trial court striking part of the covenant, a two-year limit was in place for this information. Moreover,

the very language that Janowiak challenges is favorable to him because it limits his obligation to only a two-year period. Thus, by applying the blue pencil doctrine to paragraph 3(A), the court struck an overbroad clause and added nothing to the agreement. What remains, after the redaction, is a reasonable two-year prohibition on the disclosure of Watcon's confidential information by Janowiak. We find no error in the trial court's use of the blue pencil doctrine.

[41] In light of the foregoing, we affirm the judgment of the trial court and remand, in part, with instructions.

[42] Judgment affirmed and remanded, in part, with instructions.

Kirsch, J., and Altice, J., concur.