ATTORNEY FOR APPELLANT
Terrence J. Sorg
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Thomas B. Blackwell
Mark R. Galliher
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 55S01-0409-CV-407

MICHAEL DICEN,

*Appellant (Defendant below),*

v.

NEW SESCO, INC.,

*Appellee (Plaintiff below).*

Appeal from the Morgan Superior Court, No. 55D01-0301-PL-30
The Honorable G. Thomas Gray, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 55A01-0305-CV-173

**December 21, 2005**

**Shepard, Chief Justice.**

The founders and owners of an ongoing business took in new investors and formed a successor corporation. They agreed to stay on for three years and not to compete for two years after that. We hold that such promises not to compete should be enforced on a more liberal basis than the skeptical one courts use regarding contracts between employer and employee.

1

**Facts and Procedural History**

After seven years as employees of the Indiana Department of Environmental Management ("IDEM"), Michael Dicen, David Hughes, and David Valinetz left their positions in 1996 to form their own company, Supreme Environmental Service Co. (called "Sesco"). Sesco provided environmental consulting to businesses with smoke stacks subject to IDEM regulations by testing for air quality compliance. Dicen managed Sesco's stack test division, performing marketing services, submitting bids, and training crews.

In the spring of 1999, a group of investors incorporated New Sesco, Inc. to purchase the assets of Sesco and two other environmental companies owned by Dicen, Hughes, and Valinetz. New Sesco paid a total purchase price of $750,000, of which Dicen received between $280,000 and $300,000. In exchange, Dicen signed a purchase agreement that included the following non-solicitation covenant:

> Shareholders and Seller jointly and severally agree that neither the Shareholder nor the Seller shall, for the five (5) year period immediately following the date of Closing, directly or indirectly, in any manner, whether as an individual or as an agent, employee, principal, contractor or affiliate of any other person or trade or business in competition with the Business being purchased by the Buyer pursuant to this Agreement, contract or in any manner solicit any of the persons or entities identified from time to time.

(Appellant's App. at 69; Asset Purchase Agreement, Art. VII, Sec. 7.01.)

New Sesco and Dicen executed a three-year employment agreement on the same day as the purchase agreement. The employment agreement said:

> Employee expressly covenants that during the term of this Agreement and until the second anniversary of the termination of this Agreement for any reason including a breach by the Corporation . . . he will not, except as specifically authorized in writing by the Board of Directors of the Corporation: (a) render services directly or indirectly for himself or any other person, partnership, corporation, organization or entity which is engaged in the land remediation business; or (b) use any confidential or

2

proprietary information concerning the business of the Corporation which he has acquired while performing services for the Corporation.

(Appellant's App. at 89-90; Employment Agreement, Sec. 9.2.) Another provision of the agreement applied this restriction throughout the United States. (Id. at 90, Sec. 9.4.)

Dicen worked for New Sesco in the same capacity as he had for Sesco, which meant that he was in charge of sales and marketing in the air quality testing division and interacted regularly with customers. He left New Sesco on July 12, 2002, to form his own stack testing company, Air Analysis, Inc., three years after execution of the purchase and employment agreements.

On his last day of employment, Dicen compiled a list of business contacts and handed chief operating officer James Bryan a computer disk containing the list, at Bryan's request. According to Bryan, he and Dicen had several meetings before Dicen's departure, during which he explained that Dicen was not to solicit or contract any of New Sesco's past customers, present customers, or customers New Sesco had solicited, in accordance with the asset purchase agreement.[1]

On January 16, 2003, New Sesco filed a complaint for injunctive relief against Dicen, alleging among other things that Dicen had breached the Purchase and Employment Agreements. At the preliminary injunction hearing, the trial court admitted Dicen's customer list, testimony from Bryan about his explanations to Dicen, and New Sesco's additional list of customers that were not included on Dicen's list but were also past customers, present customers, or solicited customers. The trial court granted preliminary injunction, adopting New Sesco's proposed findings and conclusions. The trial court enjoined Dicen from:

> Soliciting or contracting, on behalf of himself or any company in competition with New Sesco, any past or current customers or [sic] New Sesco, or companies to whom New Sesco had made proposals, including, but not limited to, all such customers or companies identified by New Sesco up to the date of the evidentiary hearing on Plaintiff's Motion for Preliminary

---

[1] Dicen later testified that no one at New Sesco explained to him who he could not solicit. (Tr. at 18-19.)

3

> Injunction, including, but not limited to, those entities in Exhibits "4" and "5" introduced at the evidentiary hearing.

(Appellant's App. at 6.)

The Court of Appeals affirmed in part and reversed in part, holding that the employment agreement's non-competition provision was unenforceable, that the purchase agreement's non-solicitation provision was overbroad but that the contract authorized the court to modify it to effect the intent of the parties, and that the written and oral evidence of the companies Dicen was prohibited from soliciting was admissible. Dicen v. New Sesco, Inc., 806 N.E.2d 833 (Ind. Ct. App. 2004) vacated. We granted transfer.

## Covenants Not to Compete

Dicen argues that both the purchase and employment agreement covenants are unreasonably overbroad, and therefore unenforceable. Though the Court of Appeals agreed that the covenants were unreasonably overbroad, Dicen takes issue with the Court of Appeals' modification and enforcement of the purchase agreement, which he claims contravenes the blue pencil doctrine. New Sesco counters that the agreements are reasonable, and in the alternative, the Court of Appeals correctly modified the purchase agreement in accordance with its terms.

Covenants not to compete are not favored in the law. Licocci v. Cardinal Assocs., Inc., 445 N.E.2d 556 (Ind. 1983). When reviewing covenants not to compete, Indiana courts have historically enforced reasonable restrictions, but struck unreasonable restrictions, granted they are divisible. Wiley v. Baumgardner, 97 Ind. 66, 69 (1884); Beard v. Dennis, 6 Ind. 200, 203-05 (1855); Bennett v. Carmichael Produce Co., 64 Ind. App. 341, 346-49, 115 N.E. 793, 795-96 (1917). This principle is better known as the blue pencil doctrine, though Indiana courts apparently did not use this label until 1982. See Seach v. Richards, Dieterle & Co., 439 N.E.2d 208, 215 (Ind. Ct. App. 1982).

4

For a variety of reasons, covenants not to compete ancillary to the sale of a business stand in better stead. These reasons were aptly stated by a Massachusetts court in <u>Alexander & Alexander, Inc. v. Danahy</u>:

> In the former situation there is more likely to be equal bargaining power between the parties; the proceeds of the sale generally enable the seller to support himself temporarily without the immediate practical need to enter into competition with his former business; and a seller is usually paid a premium for agreeing not to compete with the buyer. Where the sale of the business includes good will . . . a broad noncompetition agreement may be necessary to assure that the buyer receives that which he purchased . . . . On the other hand, an ordinary employee typically has only his own labor or skills to sell and often is not in a position to bargain with his employer.[2]

Despite these differences, both employment covenants and sale of a business covenants are still reviewed under a reasonableness standard. <u>Young v. Van Zandt</u>, 449 N.E.2d 300, 304 (Ind. Ct. App. 1983). As a result, the policy considerations "dictate that noncompetition covenants arising out of the sale of a business be enforced more liberally than such covenants arising out of an employer-employee relationship." <u>Alexander & Alexander, Inc.</u>, 488 N.E.2d at 28.

A. Sale of a Business Covenant

This more favorable review of sale of a business covenants leads us to conclude that the trial court was right to see the present one as reasonable, eliminating any need to use the blue pencil doctrine. "Reasonableness is . . . measured in terms of time, space, and prohibited activity." <u>Young</u>, 449 N.E.2d at 304. The more liberal enforcement of sale of a business covenants means that they will be deemed reasonable when they are "limited to the area of business involved . . . ." <u>Donahue v. Permacel Tape Corp.</u>, 234 Ind. 398, 405-06, 127 N.E.2d 235, 238 (1955).

---

[2] 488 N.E.2d 22, 28 (Mass. App. Ct. 1986). This viewpoint has been approved in Indiana. <u>See</u> <u>Fogle v. Shah</u>, 539 N.E.2d 500, 502 (Ind. Ct. App. 1989).

The covenant contains both a reasonable time provision -- five years -- and reasonably defines the prohibited activity -- contracting and soliciting. While the reach of the covenant is not entirely clear, it does restrict Dicen from contracting with and soliciting "persons or entities identified from time to time" while competing against New Sesco. (Appellant's App. at 69.) Finally, the covenant limits itself to the area of business involved by stating that Dicen shall not perform the prohibited activity while competing with New Sesco.

Dicen agues that the "from time to time" language could be interpreted to allow New Sesco an arbitrary ability to prohibit Dicen in any capacity from contracting or soliciting any entities, thus making the covenant unreasonable. We think this tries to prove too much. First, the covenant specifically prohibits Dicen from contracting or soliciting certain entities only while competing against New Sesco. Second, while the exact identity of these entities is not clear from the contract, this makes the contract ambiguous, not unreasonable. Resolving this ambiguity calls for us to address an evidentiary issue.

Dicen argues that the trial court's admission of Dicen's customer list, testimony from Bryan about his explanations to Dicen, and New Sesco's additional list of customers at the preliminary injunction hearing was error according to the parol evidence rule. Simply stated, application of the parol evidence rule means that:

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence . . . of *antecedent* understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

Corbin on Contracts § 573 (2002 reprint) (emphasis added). See also 13 Ind. Law Encyclopedia, Evidence § 106 at 67-69 (2001).

The two lists were created and Bryan's testimony occurred after the execution of the agreements, and therefore, the parol evidence rule is inapplicable in this instance.

6

The trial court did not error in admitting and considering the two lists and Bryan's testimony. These lists and Bryan's testimony adequately explain who Dicen was prohibited from soliciting and contracting, thereby making the covenant reasonable.[3]

Though the covenant is reasonable in light of the admitted evidence, it is still construed against the preparing party. Indiana & Michigan Elec. Co. v. Terre Haute Indus., Inc., 507 N.E.2d 588, 598 (Ind. Ct. App. 1987). For this reason, Dicen was only prohibited from soliciting and contracting those entities specifically identified in the Dicen list, the New Sesco list, and Bryan's testimony, and damages should be calculated accordingly.

B. Employment Covenant

Since this employment covenant not to compete was executed in the same business transaction as the sale of a business covenant, and therefore the bargaining power was likely equal here as well, we will also engage in a more liberal review of its reasonableness. Despite this standard of review, we find the employment covenant unreasonably broad in scope. Restricting Dicen from working in the land remediation business anywhere in the United States for two years after he left New Sesco exceeds the bounds of reasonableness, especially when Dicen's contacts were in a limited number of states. (Tr. at 178; Ex. 4 & 5.)

We decline to utilize a blue pencil to strike the geographical limitation, because the result would be no geographical limitation at all. The employment agreement covenants are unenforceable.

---

[3] Any claim by Dicen that the ambiguous contract did not put him on notice of who he was prohibited from soliciting is without merit. Bryan explained to Dicen that he could not solicit any past customers, current customers, or companies to whom New Sesco had made proposals, and both lists contained customers that fell into one of the three categories. (Appellant's App. at 11; Tr. at 114; Plaintiff's Ex. 4 & 5.)

**Conclusion**

We summarily affirm the Court of Appeals' analysis of the trade secrets, unclean hands, and injunction bond issues. Ind. Appellate Rule 58(A). We remand for consideration of such damages claims as may be proven consistent with upholding the sale agreement.

**Dickson, Sullivan, Boehm, and Rucker, JJ., concur.**