FILED
Apr 15 2019, 9:07 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Damon R. Leichty
Barnes & Thornburg LLP
South Bend, Indiana

Gerald E. Burns
Buchanan Ingersoll & Rooney, PC
Philadelphia, Pennsylvania

ATTORNEYS FOR APPELLEES

Joshua B. Fleming
Lucy R. Dollens
Quarles & Brady LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Heraeus Medical, LLC, a
Delaware Limited Liability
Company; Devin Childers, an
individual; Robert Kolbe, an
individual; James "Worth"
Burns, an individual; Paul Cruz,
an individual; and Kyle Kolbe,
an individual,

*Appellants-Defendants,*

v.

Zimmer, Inc., a Delaware
corporation d/b/a Zimmer
Biomet, and Zimmer US, Inc., a
Delaware corporation,

*Appellees-Plaintiffs.*

April 15, 2019

Court of Appeals Case No.
18A-PL-1823

Interlocutory Appeal from the
Kosciusko Superior Court

The Hon. David C. Cates, Judge

Trial Court Cause No.
43D01-1802-PL-21

**Bradford, Judge.**

# Case Summary

[1]     Beginning in 2012, Heraeus Medical GmbH and Zimmer Surgical, Inc., had an agreement pursuant to which Zimmer Surgical had exclusive United States distribution rights to certain bone cements manufactured by Heraeus Medical GmbH and sold under the brand name Palacos ("the Distribution Agreement"). Zimmer Surgical is a subsidiary of Zimmer, Inc., d/b/a as Zimmer Biomet. In late 2017, Robert Kolbe was an employee of Zimmer Biomet and had signed an agreement containing non-compete and non-solicitation of Zimmer Biomet customers and employees covenants ("the Kolbe Agreement"). In January of 2018, Heraeus Medical GmbH exercised its right to terminate the Distribution Agreement as of December 2018. Soon thereafter, Heraeus Medical GmbH announced that it had established a new direct sales force for Palacos through its newly-established American affiliate, Heraeus Medical, Inc. ("Heraeus"), which included Kolbe, who had left Zimmer Biomet in November of 2017.

[2]     In February of 2018, Zimmer Biomet and Zimmer US, Inc. (collectively, "Zimmer"), sued, *inter alia*, Heraeus and Kolbe on various grounds, also seeking a preliminary injunction enforcing the Kolbe Agreement and the restrictive covenants signed by the other individual defendants. On July 12, 2018, the trial court issued a preliminary injunction in which it ordered Kolbe to generally abide by the terms of the Kolbe Agreement and ordered Heraeus to not possess, use, or disclose confidential information received from Heraeus GmbH or employ or engage the individual defendants in a way that violated

their restrictive covenants with Zimmer Biomet or the trial court's preliminary injunction. Heraeus, Kolbe, and four other individual defendants ("Appellants") appeal, contending that the Kolbe Agreement is contrary to law and unenforceable, the trial court misapplied certain provisions of the Kolbe Agreement, and portions of the preliminary injunction related to Heraeus are unreasonable.[1] While we largely disagree with Appellants' arguments, we do agree that the Kolbe Agreement's covenant not to solicit Zimmer Biomet employees is overbroad and so reform it to comply with Indiana law. We also agree that in crafting its preliminary injunction, the trial court (1) incorrectly defined the geographic scope of the Kolbe Agreement and (2) applied the term "contact" in a way inconsistent with the Kolbe Agreement. We affirm in part, reverse in part, and remand with further instructions.

# Facts and Procedural History

As of January 1, 2012, Zimmer Surgical and Heraeus Medical GmbH were parties to the Distribution Agreement, pursuant to which Zimmer Surgical was granted an exclusive license to distribute, market, promote, and sell certain bone cements manufactured by Heraeus Medical GmbH, all sold under the

---

[1] The trial court's order also enjoined former Zimmer Biomet employees Devin Childers and James "Worth" Burns from violating the terms of their restrictive covenants. However, Appellants do not challenge the preliminary injunction as it relates to Childers, and Burns is no longer working for Heraeus, rendering Appellants' claims related to him moot. "[W]hen we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination 'where absolutely no change in the status quo will result.'" *Jones v. State*, 847 N.E.2d 190, 200 (Ind. Ct. App. 2006) (citation omitted), *trans. denied*. If Appellants were to prevail on any, or even all, of their claims related to Burns, nothing would change, so we will not address them.

name Palacos. Zimmer has also developed its own line of competing bone cement. The initial term of the Distribution Agreement was to end on December 31, 2018, subject to possible extension. Beginning on January 1, 2018, each party had the right to elect to make the Distribution Agreement non-exclusive for the final year, which Heraeus Medical GmbH did on January 3. By this time, Heraeus Medical GmbH had established a direct sales force to sell Palacos in the United States through its newly-organized affiliate Heraeus. As it happened, several former Zimmer Biomet employees had recently left to take sales positions at Heraeus, including Devin Childers, Kolbe, James "Worth" Burns, Paul Cruz, and Kyle Kolbe ("K. Kolbe").

[4] Kolbe was hired by Heraeus in November of 2017, currently serves as vice-president of sales, and was previously employed by Zimmer Biomet as Group Director for Enterprise Solutions for the East. Kolbe signed the Kolbe Agreement on September 30, 2015, which contains a covenant not to compete and covenants not to solicit Zimmer Biomet customers or employees. The covenant not to solicit customers or active prospects provides, in part, that "[e]mployee will not, directly or indirectly, (i) provide, sell or market; (ii) assist in the provision, selling or marketing of; or (iii) attempt to provide, sell or market any Competing Products to any of Company's Customers or Active Prospects in the Restricted Territory." Appellants' App. Vol. IV p. 153.

[5] The Kolbe Agreement defines "Active Prospect" as

> [a]ny person or entity that Company, through its representatives, specifically marketed to and/or held discussions with regarding the sale of any of Company's products or services at any time

during the last six (6) months of Employee's employment with Company and with respect to whom, at any time during the six (6) months immediately preceding the termination of Employee's employment with Company, Employee had (i) any marketing or sales contact on behalf of Company and/or ii) access to, or gained knowledge of, any Confidential Information concerning Company's business prospects with such Active Prospect.

Appellants' App. Vol. IV p. 152.

The Kolbe Agreement's covenant not to solicit Zimmer Biomet employees provides as follows:

Employee will not employ, solicit for employment, or advise any other person or entity to employ or solicit for employment, any individual employed by Company at the time of Employee's separation from Company employment, or otherwise induce or entice any such employee to leave his/her employment with Company to work for, consult with, provide services to, or lend assistance to any Competing Organization.

Appellants' App. Vol. IV p. 153. All covenants have terms of eighteen months after Kolbe left Zimmer Biomet, to be extended in cases of noncompliance. Moreover, the Kolbe Agreement contains the following provision: "The parties agree that any court interpreting the provisions of this Agreement shall have the authority, if necessary, to reform any such provision to make it enforceable under applicable law." Appellants' App. Vol. IV p. 156.

On February 23, 2018, Zimmer sued Heraeus, Childers, Kolbe, Burns, Cruz, and K. Kolbe for (1) breach of contract against the individual defendants; (2) tortious interference with contracts against Heraeus; and (3) and tortious interference with business relationships, civil conspiracy, and unfair

competition against all defendants. Zimmer also sought a preliminary injunction to stop violations of the confidentiality, non-compete, and non-solicitation agreements signed by the various individual defendants. On April 17 and 18 and May 22, 2018, the trial court heard evidence relevant to Zimmer's motion for a preliminary injunction. Prior to the hearing, Zimmer withdrew its request as to K. Kolbe, and, on May 31, 2018, the trial court issued an agreed injunction order as to Cruz.

[8] On July 12, 2018, the trial court denied Zimmer's motion for preliminary injunction in part and granted it in part. The trial court, in part, ordered Kolbe enjoined from

> b. Directly or indirectly working or lending assistance to Heraeus, its sales managers, employees, or independently contracted distributors or sales representatives, for the sale and promotion of Heraeus' products and services in the Eastern half of the U.S. (the territory assigned to him in his last position with Zimmer Biomet), which includes: Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, Mississippi, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, Washington D.C., West Virginia;
>
> c. Providing, selling or marketing to, or contacting any of Zimmer Biomet's Customers to whom Kolbe sold during his last two years *or* to Zimmer Biomet's Active Prospects to whom Kolbe marketed Zimmer Biomet products in his last six months of employment;
>
> d. Urging, inducing or seeking to induce any distributor or sales representative with whom Zimmer Biomet had a

business relationship at the time of Robert Kolbe's resignation on November 3, 2017, to terminate its or their relationship with, or representation of, Zimmer Biomet or to cancel, withdraw, reduce, limit or in any manner modify any such person's or entity's business with, or representation of, Zimmer Biomet;

e.   Employing or soliciting for employment, or advising Heraeus to employ or solicit for employment any individual employed by Zimmer Biomet as of November 3, 2017, or otherwise directly or indirectly induce or entice any such employee to leave his/her employment with Zimmer Biomet to work for, consult with, provide services to, or lend assistance to Heraeus.

Appellants' App. Vol. II pp. 58–59.

[9]   The trial court, in part, preliminarily enjoined Heraeus as follows:

a.   Heraeus shall not possess, use or disclose any Zimmer Biomet Confidential Information received from the Individual Defendants, any other Zimmer Biomet employee or sales representative, or from Zimmer Biomet through its parent, Heraeus Medical GmbH.

b.   Heraeus shall not employ or engage the Individual Defendants in any capacity that violates their respective Agreements or this Order for 18 months from the entry of this Preliminary Injunction.

Appellants' App. Vol. II p. 60.

# Discussion and Decision

[10]   Appellants advance several challenges to the trial court's preliminary injunction. "The grant or denial of a preliminary injunction rests within the sound discretion of the trial court, and our review is limited to whether there

was a clear abuse of that discretion." *Ind. Family & Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 161 (Ind. 2002) (citing *Harvest Ins. Agency, Inc. v. Inter-Ocean Ins. Co.*, 492 N.E.2d 686, 688 (Ind. 1986)).

> In order to obtain injunctive relief, appellee had the burden of showing that: 1) its remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action; 2) it had at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) its threatened injury outweighed the potential harm to appellant resulting from the granting of an injunction; and 4) the public interest would not be disserved.

*Harvest Ins. Agency*, 492 N.E.2d at 688. "If the movant fails to prove any of these requirements, the trial court's grant of an injunction is an abuse of discretion." *Ind. Family & Soc. Servs. Admin.*, 769 N.E.2d at 161.

# I. Restrictive Covenants

[11] Appellants make several claims related to the restrictive covenants entered into by Kolbe when he was employed by Zimmer Biomet. Specifically, Appellants claim that some of the provisions of the Kolbe Agreement are unenforceable and that the trial court abused its discretion by applying other provisions in such a way as to exceed the actual scope of the covenants. We take these claims as claims that the trial court abused its discretion in concluding that Zimmer established a prima facie case.

## A. Whether Certain Provisions of the Covenants Are Overbroad as a Matter of Law

[12] Appellants contend that certain provisions of the Kolbe Agreement are overbroad as a matter of law. It is well-established that

Indiana courts disfavor covenants which restrict a person's liberty of action in his business or trade. *Eaton Corporation v. Appliance Valves Corporation*, 526 F. Supp. 1172, 1182 (N.D. Ind. 1981). Accordingly, Indiana courts will not hesitate to strike down any such restrictive covenants which are the least bit overly broad with respect to the "protectible interest" at stake. *Slisz v. Munzenreider Corporation*, 411 N.E.2d 700, 705 (Ind. Ct. App. 1980). Where the underlying protectible interest is minimal, courts will closely scrutinize the terms of the restraint. *Id.* The burden is on the party seeking to enforce the covenant to demonstrate that the injunction is necessary to protect a legitimate business interest. *Smart Corporation v. Grider*, 650 N.E.2d 80, 83 (Ind. Ct. App. 1995) (Former employer is not entitled to the enforcement of a restrictive covenant unless he can show that the former employee gained a unique competitive advantage or ability to harm the employer during their relationship), *trans. denied*.

*Wagler Excavating Corp. v. McKibben Const., Inc.*, 679 N.E.2d 155, 157–58 (Ind. Ct. App. 1997), *trans. denied*. "In order to be enforceable, the provisions of a covenant not to compete must be reasonable, which is a question of law." *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 913 (Ind. Ct. App. 2011). "To be reasonable, an agreement containing such a covenant must protect legitimate interests of the employer, and the restrictions established by the agreement must be reasonable in scope as to time, activity, and geographic area." *Id.*

### 1. Geographic Scope

[13] Appellants contend that the Kolbe Agreement is void because it does not contain a clearly-defined territory. "Restricted Territory" is defined in the Kolbe Agreement as:

> (i) any Customer-specific or geographic territory assigned to, or covered by, Employee during Employee's last two (2) years of

employment with Company; (ii) any state or portion of any state assigned to Employee by Company for purposes of any sales or service activities or responsibilities at any time during the two (2) years preceding the termination of Employee's employment with Company; or (iii) any county, municipality or parish of any state or commonwealth assigned to Employee or in which Employee engaged in any sales or service activities on behalf of Company at any time during the two (2) years preceding termination of Employee's employment with Company.

Appellants' App. Vol. IV p. 152.

[14] Appellants first argue that a restrictive employment covenant without a defined geographic scope is not enforceable in Indiana. Indiana law, however, requires only that the geographic scope of restrictive employment covenant be reasonable, not that it be spelled out in explicit terms. *See Coates*, 942 N.E.2d at 915. Appellants' argument that the Kolbe Agreement is void because it did not include an explicit geographic scope is not supported by Indiana law. *See also Zimmer US, Inc. v. Mire*, 188 F. Supp. 3d 843, 849–50 (N.D. Ind. 2016) ("So the issue before the court […] is this: does the fact that the Agreement is silent on the issue of an *assigned* restricted geographic area automatically nullify the restrictive covenants? The answer to that question is no.").

[15] Moreover, Indiana law also provides that if the trial court cannot determine the reasonableness of that scope solely from the covenant document, it may consider extrinsic evidence in the preliminary injunction hearing. *See id.* (considering stipulated facts submitted to determine geographic scope of covenant). As for that evidence in this case, Kolbe conceded that the map admitted as Plaintiff's Exhibit 129 accurately reflected his territory while at

Zimmer Biomet. Exhibit 129 indicates that Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Indiana, Kentucky, Maine, Maryland, Massachusetts, most of Michigan, Mississippi, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, Washington D.C., and West Virginia comprised Kolbe's territory while at Zimmer Biomet.

[16] Appellants argue that the map that is Exhibit 129 is not accurate enough to determine precisely which territories are included in the East region. For the most part, we disagree. The vast majority of the border between the East and West regions is obviously defined by the borders between various states. Appellants are correct, however, that Exhibit 129 indicates that not all of Michigan is in the East and so was not included in Kolbe's territory at Zimmer Biomet. Specifically, it appears that a large portion of the Upper Peninsula of Michigan is, in fact, included in the West region. We remand with instructions to clarify which portions of Michigan are assigned to the East region and which are in the West.[2]

## 2. Non-Solicitation of Customers Covenant

[17] Appellants contend that the non-solicitation covenant in the Kolbe Agreement is overbroad because it allegedly prohibits him from soliciting every Zimmer Biomet customer in the United States, not just customers in Kolbe's old

---

[2] It appears that portions of Northwestern Arkansas and Southern Mississippi have also been assigned to the West region. Appellants, however, have made no claim regarding these areas.

territory. This argument, however, is premised on a mischaracterization of the terms of the covenant. The language in question, far from enjoining Kolbe from attempting to solicit business from any of Zimmer Biomet's customers, clearly applies only to customers in the restricted territory, or Kolbe's old territory. Appellants' App. Vol. II p. 59. While it is true that the term "Customer" as defined in the Kolbe Agreement is quite broad, the covenant plainly limits its scope to customers in Kolbe's old territory.

[18] Appellants also contend that the order not to solicit "Zimmer Biomet's Active Prospects to whom Kolbe marketed Zimmer Biomet products in his last six months of employment" cannot be enforced because covenants not to solicit prospective customers are unenforceable under Indiana law. Appellants' App. Vol. II p. 59. The cases on which Appellants rely, however, do not stand for such a broad proposition. In *Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208 (Ind. Ct. App. 1982), the problem with the covenant was its length, not that it concerned prospective customers. In invalidating the covenant at issue in that case, the *Seach* court stated its reasoning as follows: "The contract prohibits contact with all past or prospective customers of the Firm, *no matter how much time has elapsed since their patronage ceased or the contact was made*. This restraint is vague and too broad." *Id*. at 214 (emphasis added). Indeed, not only did the *Seach* court *not* state that an interest in prospective customers cannot ever be protectable, it explicitly stated that it was not "decid[ing] whether a solitary 'contact' with a prospective customer is sufficient to bestow upon the employer a protectable interest." *Id*. at 214 n.5. In *Clark's Sales & Service, Inc. v. Smith*, 4

N.E.3d 772 (Ind. Ct. App. 2014), *trans. denied*, the court invalidated as overbroad a covenant that prohibited Smith from soliciting "anyone who was a customer of Clark's during the term of Smith's employment[,]" which happened to be fourteen years. *Id.* at 781. As in *Seach*, the basis of our ruling was the covenant's length: "[W]e agree with the trial court's conclusion that Clark's attempt to protect a customer base spanning the entire term of Smith's employment is overly broad and unreasonable." *Id.* at 782. Indeed, prospective customers were not even included in the non-solicitation covenant at issue in *Clark's*. In the absence of any Indiana authority that prospective customers cannot ever be a protectable interest, we decline to issue so broad a holding.

[19] None of this means, of course, that a covenant preventing the solicitation of active prospects is necessarily valid, as it must still be reasonable. We conclude that, under the circumstances of this case, the covenant regarding active prospects is reasonable. As mentioned, "Active Prospects" are defined in the Kolbe Agreement as a person or entity "specifically marketed to and/or held discussions with regarding the sale of any of Company's products or services at any time during the last six (6) months of Employee's employment with Company[.]" Appellants' App. Vol. IV p. 152.

[20] First, it is important to note that the covenant only restricts contact with active prospects, *i.e.*, those Kolbe had already contacted and/or with whom he had already communicated, not all potential customers. In our view, this distinction is significant. While it might be unreasonable to prohibit any

contact with potential customers altogether, it does seem to us that it would be unfair for Heraeus to be able to finish building upon a foundation laid by Kolbe when he worked for Zimmer Biomet. Because the covenant in the Kolbe Agreement is limited to those with whom Kolbe already had some sort of association, it is far less broad than a covenant prohibiting solicitation of *all* potential customers.

A second point worth noting is that the covenant at issue here is also of quite limited duration, applying only to the active contacts generated in the six months before Kolbe left Zimmer Biomet. This six-month look-back period is a far cry from the unlimited period in *Seach*. Because the non-solicitation covenant of the Kolbe Agreement is limited in both scope and duration, we cannot say that Appellants have established a likelihood of success on the merits.

### 3. Non-Solicitation of Zimmer Biomet Employees Covenant

The Kolbe Agreement contains a covenant not to solicit Zimmer Biomet employees to work for Heraeus, with employees defined as all persons who were employees at the time of Kolbe's separation from the company. Appellants contend that such covenants are overbroad and violate Indiana law. There is, as Appellants acknowledge, no Indiana authority to support this proposition. Appellants urge us, however, to adopt the Wisconsin Supreme Court's reasoning in *Manitowoc Co., Inc. v. Lanning*, 906 N.W.2d 130 (Wis. 2018), a recent decision invalidating a similar covenant.

[23] We decline Appellants' invitation. Not only is *Manitowoc* not binding in Indiana, we are not persuaded by its approach. The *Manitowoc* court's decision was informed by a Wisconsin statute that has no Indiana counterpart and provides as follows:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this section, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

Wis. Stat. § 103.465. While section 103.465 does not, on its face, seem significantly different from Indiana law on the topic, suffice it to say that we largely agree with the dissent's assessment of the majority opinion in *Manitowoc*: "The lead opinion distorts the plain meaning of Wis. Stat. § 103.465, thereby changing it from a statute that balanced the rights of employees and their employers into a broad mandate that prevents employers from protecting their businesses from third-party raiding." *Manitowoc*, 906 N.W.2d at 151 (Roggensack, C.J., dissenting).

[24] We think that it almost does not need to be stated that Zimmer Biomet has a legitimate interest in not having its valuable employees poached by a direct competitor through the efforts of former employees now working for that competitor. This interest, of course, must be balanced against the interests of

Kolbe and Heraeus in being able to recruit a capable sales staff as well as the interests of the individual employees in being able to compete freely in the employment marketplace. Generally, we do not think that the covenant unduly interferes with these interests. If any employee of Zimmer Biomet wishes to leave and work for Heraeus, the covenant presents no obstacle; indeed, it seems that any Zimmer Biomet employee can even be actively recruited by Heraeus, just not with Kolbe's participation. Appellants do not really dispute any of this, arguing only that Zimmer Biomet does not have a legitimate interest in restricting the employment mobility of "employees such as drivers or shelf stockers[.]" Appellants' Br. p. 43.

[25] On this point, we agree with Appellants; Zimmer Biomet has not shown that it has a legitimate protectable interest in its entire workforce, which includes many employees who would not have access to or possess any knowledge that would give a competitor an unfair advantage. Appellants would have us invalidate the entire Kolbe Agreement due to this overbreadth, but we choose to reform the overbroad provision instead. As a general rule, "[i]f a court finds that portions of a noncompetition agreement or covenant not to compete are unreasonable, it may not create a reasonable restriction under the guise of interpretation, since this would subject the parties to an agreement they have not made." *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 177 (Ind. Ct. App. 2008). Here, however, the parties specifically agreed that we have the authority "to reform any [unreasonable] provision to make it enforceable under applicable law." Appellants' App. Vol. IV p. 156. To that end, we reform the

non-solicitation of employees covenant of the Kolbe Agreement to be limited in scope to those employees in which the company has a legitimate protectable interest.

## B. Whether the Trial Court Misapplied the Kolbe Agreement in Crafting the Preliminary Injunction

### 1. Geographic Scope

[26] Appellants contend that the trial court erred in ordering that Kolbe be enjoined from operating in the entire state of Michigan when Plaintiff's Exhibit 129 indicates that the Upper Peninsula is divided between Zimmer Biomet's East and West regions. We agree. For the reasons previously mentioned, we remand with instructions to revise the preliminary injunction to exclude that portion of Michigan included in the West region.

### 2. Non-Solicitation of Customers Covenant

[27] Appellants contend that the trial court's preliminary injunction order is unreasonable in that its language exceeds the scope of the Kolbe Agreement's non-solicitation of customers language. The non-solicitation covenant of the Kolbe Agreement reads, in full, as follows:

> Employee will not, directly or indirectly, (i) provide, sell or market; (ii) assist in the provision, selling or marketing of; or (iii) attempt to provide, sell or market any Competing Products to any of Company's Customers or Active Prospects in the Restricted Territory. For purposes of this paragraph, "directly or indirectly" shall mean, without limitation, that Employee will not be permitted to contact for the purpose of selling, soliciting or influencing any Customer or individual affiliated with any Customer that purchases Competing Products or complimentary

or ancillary medical services, which Employee agrees is a reasonable limitation to prevent cross marketing or leveraging of the Employee's relationship with Company's Customers. This restriction shall not include or prohibit Employee from working for or on behalf of an individual or entity that is not a Competing Organization.

Appellants' App. Vol. IV p. 153. The trial court enjoined Kolbe from "[p]roviding, selling or marketing to, or contacting any of Zimmer Biomet's Customers to whom Kolbe sold during his last two years *or* to Zimmer Biomet's Active Prospects to whom Kolbe marketed Zimmer Biomet products in his last six months of employment[.]" Appellants' App. Vol. II p. 59.

[28] Specifically, Appellants contend that the trial court unreasonably (1) deleted the phrase "in the Restricted Territory," (2) deleted the last sentence of the paragraph, and (3) added the word "contacting." We do not see how the trial court's deletion of the phrase "restricted territory" could prejudice Heraeus or Kolbe. The injunction prohibits Kolbe from soliciting his former customers and active contacts, who necessarily would have been from the "restricted territory," essentially rendering the term unnecessary. Deletion of the last sentence strikes us as similarly harmless, as it merely states when the covenant does not apply, information that can easily be inferred from language explaining when it does.

[29] As for Appellants' claim that insertion of the word "contacting" into the preliminary injunction was unreasonable, we acknowledge that they have a point. The non-solicitation language in the Kolbe Agreement prohibits Kolbe from contacting his former customers or active contacts, but only if it is "for the

purpose of selling, soliciting or influencing any Customer or individual affiliated with any Customer that purchases Competing Products or complimentary or ancillary medical services[.]" Appellants' App. Vol. IV p. 153. Although Kolbe was enjoined from contacting former customers and active contacts for all purposes, the Kolbe Agreement did not go that far. We remand with instructions to narrow the scope of the preliminary injunction accordingly.

### 3. *Non-Solicitation of Employees Covenant*

As mentioned, we have reformed the Kolbe Agreement to limit the scope of Kolbe's obligation not to solicit Zimmer Biomet employees to those in which it has a legitimate protectable interest. We remand with instructions to narrow the scope of the preliminary injunction accordingly.

# II. Injunction Against Heraeus

Appellants also contend that portions of the trial court's preliminary injunction concerning Heraeus were unreasonable. Specifically, Appellants contend that the prohibitions on Heraeus using confidential information received from its parent Heraeus Medical GmbH are unreasonable and that the term for Heraeus to monitor Kolbe's compliance with the preliminary injunction is unreasonably longer than the term of the Kolbe Agreement itself.

## A. Confidential Information from Heraeus GmbH

The trial court preliminarily enjoined Heraeus from "possess[ing], us[ing] or disclos[ing] any Zimmer Biomet Confidential Information received from […] Zimmer Biomet through its parent, Heraeus Medical GmbH." Appellants'

App. Vol. II p. 60. On January 3, 2019, however, the parties entered into a joint stipulation to alter the preliminary injunction to state that Heraeus may, "beginning on January 1, 2019, possess and/or use the information contained in the Quarterly Reports identified in Paragraph 2.4(c) of the United States Distribution and Supply Agreement ('Distribution Agreement') dated January 1, 2012." Appellees' Supp. App. Vol. III p. 66. Appellants do not claim that Heraeus is entitled to receive any confidential information from Heraeus Medical GmbH beyond that contained in the quarterly reports, so Heraeus has already received the benefit Appellants seek in this appeal. Consequently, this claim is moot, and we need not address it further. *See Jones*, 847 N.E.2d at 200.

## B. Duration of Heraeus's Oversight of Kolbe

[33] The trial court's order provided, in part, that "Heraeus shall not employ or engage the Individual Defendants in any capacity that violates their respective Agreements or this Order for 18 months from the entry of this Preliminary Injunction." Appellants' App. Vol. II p. 60. Appellants contend that this part of the preliminary injunction amounts to an improper extension of Kolbe's covenants beyond the terms of the Kolbe Agreement. As Zimmer points out, however, the language at issue enjoins *Heraeus*, not Kolbe, and, as such, has no effect on the length of his covenants. Moreover, we do not see how Heraeus can establish any possibility of prejudice under the circumstances. Even if we assume that the trial court's order has the effect of improperly extending the term of Heraeus' oversight obligation past the end of Kolbe's covenants, there is simply nothing to oversee once Kolbe's covenants run. Appellants have failed

to establish the trial court's preliminary injunction is unreasonable in this regard.

# Conclusion

[34] We conclude that all of Appellants' claims regarding Burns are moot. We also conclude that (1) the Kolbe Agreement is not rendered unenforceable because it lacks a defined geographic scope and (2) its covenant to not solicit customers of active contacts is not overbroad. We do agree, however, that the Kolbe Agreement's covenant not to solicit Zimmer Biomet employees is overbroad, and so reform it as the parties agreed the court has the power to do. We also agree with Appellants that the trial court misapplied the Kolbe Agreement in enjoining Kolbe from operating in the entire state of Michigan and from contacting his former customers or active prospects for any reason whatsoever. Finally, we conclude that Appellants have not established that the trial court's preliminary injunction as it related to Heraeus was unreasonable in any respect.

[35] We affirm the interlocutory order of the trial court in part, reverse in part, and remand for further proceedings consistent with this opinion.

Crone, J., and Tavitas, J., concur.