



FILED

Dec 03 2019, 12:04 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-PL-471

## Heraeus Medical, LLC, et al.
*Appellants (Defendants)*

—v—

## Zimmer, Inc., et al.
*Appellees (Plaintiffs)*

---

Argued: September 26, 2019 | Decided: December 3, 2019

Appeal from the Kosciusko Superior Court, No. 43D04-1802-PL-21
The Honorable David C. Cates, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 18A-PL-1823

---

**Opinion by Chief Justice Rush**

Justices David, Massa, Slaughter, and Goff concur.

**Rush, Chief Justice.**

Indiana courts employ the "blue pencil doctrine" to revise unreasonable noncompetition agreements. This doctrine, though, is really an eraser.

Under the blue pencil doctrine, courts can make overbroad covenants reasonable by deleting language, but they may not add terms—even if the agreement contains a clause authorizing a court to do so. Here, the overbroad covenant cannot be blue-penciled to render it reasonable; so we vacate the section of the trial court's preliminary injunction purporting to enforce that provision.

## Facts and Procedural History

Zimmer employee Robert Kolbe signed a noncompetition agreement (Kolbe Agreement) soon after he transitioned into a group director role. At issue today is a provision within the Kolbe Agreement—a nonsolicitation covenant.

That nonsolicitation covenant, which Zimmer drafted, prohibited Kolbe from recruiting Zimmer employees to work for a competitor. At the time, Zimmer was the exclusive United States distributor of one of Heraeus's major medical products.

But a couple years later, Heraeus created an affiliate—Heraeus Medical—to sell its products in the United States. Kolbe then left Zimmer and joined Heraeus Medical to build a sales team. In his new role, Kolbe recruited agents "on a weekly basis" for Heraeus Medical. Eventually, several positions at Heraeus Medical were filled by former Zimmer employees.

Litigation ensued. Asserting multiple claims, Zimmer sought damages from Heraeus Medical, Kolbe, and other former employees.

As relevant here, Zimmer alleged that Kolbe violated the nonsolicitation covenant by recruiting former Zimmer employees to work for Heraeus Medical. Zimmer also sought a preliminary injunction to enforce the Kolbe Agreement. After a hearing, the trial court preliminarily

enjoined Kolbe from recruiting Zimmer employees as prohibited by the covenant.

On appeal, the Court of Appeals concluded that the nonsolicitation covenant was overbroad and thus unenforceable as written. *Heraeus Med., LLC v. Zimmer, Inc.*, 123 N.E.3d 158, 167 (Ind. Ct. App. 2019). But, finding that a reformation clause in the Kolbe Agreement authorized the court to modify unenforceable provisions, the panel revised the nonsolicitation covenant to make it reasonable. *Id.* at 167–68. It did this by adding language limiting the covenant's scope to only "those employees in which [Zimmer] has a legitimate protectable interest." *Id.*

Heraeus Medical petitioned for transfer. We granted the petition, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

This case presents an intersection of two standards of review.

Heraeus Medical and Kolbe[1] appeal from the trial court's grant of a preliminary injunction, which we review for an abuse of discretion. *Cent. Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 727 (Ind. 2008). An abuse of discretion can occur under various circumstances, including when the trial court misinterprets the law. *See Myers v. Myers*, 560 N.E.2d 39, 42 (Ind. 1990). To the extent our analysis depends on the trial court's interpretation of a purely legal question—here, whether a court, pursuant to a reformation clause, can add language to an unenforceable restrictive covenant in a noncompetition agreement—we afford that matter de novo review. *Cf. Harrison v. Thomas*, 761 N.E.2d 816, 818 (Ind. 2002) (noting that "construction of the terms of a written contract is a pure question of law for the court, reviewed de novo").

---

[1] Because Kolbe's interests are aligned with those of Heraeus Medical, we will hereafter refer to the parties collectively as "Heraeus Medical."

# Discussion and Decision

Noncompetition agreements restrict former employees from using valuable information obtained during their employment—such as trade secrets or confidential client data—to harm their former employers. But because these agreements "are in restraint of trade," courts enforce them only if they are reasonable. *Krueger*, 882 N.E.2d at 728–29; *see also Dicen v. New Sesco, Inc.*, 839 N.E.2d 684, 687 (Ind. 2005). If a court deems a noncompetition provision unreasonable, it will apply the "blue pencil doctrine," severing unreasonable, divisible portions and then enforcing the reasonable parts that remain. *Dicen*, 839 N.E.2d at 687.

As written, the Kolbe Agreement's employee nonsolicitation covenant is overbroad because it applies to all Zimmer employees. Relying on the agreement's reformation clause—which purported to give a court the power to modify unreasonable provisions—the Court of Appeals limited the covenant's scope to only "those employees in which the company has a legitimate protectable interest." *Zimmer*, 123 N.E.3d at 167–68. Heraeus Medical argues that adding language to the covenant contravenes Indiana's established blue pencil doctrine. Zimmer, on the other hand, contends that reforming the overbroad covenant wouldn't upend the blue pencil doctrine, but would rather "give effect to the parties' stated intent."

We disagree with Zimmer. Consistent with the history and purpose of Indiana's blue pencil doctrine, courts cannot add terms to an unenforceable restrictive covenant in a noncompetition agreement—even when that agreement contains language purporting to give a court the power to do so. And because Zimmer's nonsolicitation covenant is overbroad and cannot be blue-penciled in a way that would render it reasonable under Indiana law, the covenant is void and unenforceable. We summarily affirm the decision of the Court of Appeals on all other issues. *See* App. R. 58(A)(2).

# I. The blue pencil doctrine does not allow a court to add language to an overbroad restrictive covenant.

Noncompetition agreements "in employment contracts are in restraint of trade and disfavored by the law." *Krueger*, 882 N.E.2d at 728–29. These agreements are thus strictly construed against employers. *Id.* at 729.

When presented with unreasonable restrictions within a noncompetition agreement, Indiana courts apply the "blue pencil doctrine." *Id.* at 730. Under this doctrine, a court may excise unreasonable, divisible language from a restrictive covenant—by erasing those terms— until only reasonable portions remain. *Blue-Pencil Test*, Black's Law Dictionary (10th ed. 2014); *Krueger*, 882 N.E.2d at 730; *Dicen*, 839 N.E.2d at 687. The doctrine, however, does not allow a court to rewrite a noncompetition agreement by adding, changing, or rearranging terms. *Krueger*, 882 N.E.2d at 730; *Clark's Sales & Serv., Inc. v. Smith*, 4 N.E.3d 772, 783–84 (Ind. Ct. App. 2014), *trans. denied*. Importantly, the blue pencil doctrine applies to all restrictive covenants within noncompetition agreements, not just prohibitions against working for a competitor. *See, e.g., Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 814–15 (Ind. Ct. App. 2000) (blue-penciling an overbroad customer nonsolicitation covenant).

Some courts have criticized the blue pencil doctrine as valuing a contract's wording over its substance. *See, e.g., Data Mgmt. v. Greene*, 757 P.2d 62, 64 (Alaska 1988). But we find appeal in its predictability.

The doctrine allows an employer to draft a reasonable and enforceable noncompetition agreement, while discouraging the employer from overreaching. *Prod. Action Int'l, Inc. v. Mero*, 277 F. Supp. 2d 919, 932 (S.D. Ind. 2003). The doctrine also protects parties' expectations by not subjecting them to an agreement they didn't make. *See Licocci v. Cardinal Assocs., Inc.*, 445 N.E.2d 556, 561 (Ind. 1983) (finding that "the courts may not create a reasonable restriction under the guise of interpretation, since this would subject the parties to an agreement they had not made"); *Mero*, 277 F. Supp. 2d at 932 (observing that the "Indiana courts' refusal to rewrite agreements for parties can also be consistent with the parties'

intentions"). We thus concur with those courts that have deemed the blue pencil doctrine a "sound and reasonable," though imperfect, method to balance the interests of employers against those of employees. *Mero*, 277 F. Supp. 2d at 932; *see also Smith*, 4 N.E.3d at 786.

With the blue pencil doctrine's general principles in hand, we now turn to whether the Kolbe Agreement's reformation clause can render the doctrine inapplicable, by permitting a court to add language to the unreasonable covenant not to solicit Zimmer employees.

## II. The blue pencil doctrine applies despite the Kolbe Agreement's reformation clause.

The Kolbe Agreement contains a "reformation clause," stating that the parties agree to give "any court interpreting the provisions of this Agreement . . . the authority, if necessary, to reform any such provision to make it enforceable under applicable law."

The Court of Appeals recognized that, "as a general rule," the blue pencil doctrine does not permit a court to create reasonable restrictions after finding a noncompetition covenant unreasonable. *Zimmer*, 123 N.E.3d at 167 (cleaned up). But the panel nonetheless found that the reformation clause conferred authority on a court to modify the employee nonsolicitation covenant. *Id.*

Heraeus Medical asserts that authorizing courts to redraft noncompetition agreements would fundamentally alter Indiana law by emboldening employers to draft unreasonable restrictive covenants, "comfortable in the knowledge that a reviewing court will be able to reform [them] in the event of litigation." But Zimmer claims, citing *Smart Corp. v. Grider*, 650 N.E.2d 80, 84–85 (Ind. Ct. App. 1995), *trans. denied*, that reforming an employee nonsolicitation covenant to "give effect to the parties' stated intent . . . is hardly unprecedented."

Zimmer's reliance on *Grider* is misplaced because that case did not involve adding terms to an unenforceable restrictive covenant. Rather, the *Grider* majority interpreted a noncompetition provision's language—

stating that the agreement could be enforced "to the extent permitted by applicable law"—as limiting the provision's scope to "the state of Indiana." 650 N.E.2d at 84–85.[2] Zimmer cannot point to, and we cannot find, any Indiana case where a court determined it was authorized to reform an unreasonable noncompetition agreement.

Instead, Indiana decisions have applied the blue pencil doctrine strictly. In *Sharvelle v. Magnante*, 836 N.E.2d 432, 439 (Ind. Ct. App. 2005), our Court of Appeals rejected an employer's argument "that the parties expressly authorized the court" to add terms to a noncompetition agreement if it were "found overly broad and unenforceable." Applying the blue pencil doctrine, the panel refused to replace an overly broad phrase in the agreement's covenant not to compete and held that the covenant was unenforceable. *Id.* Likewise, both of our federal district courts have anticipated, based on Indiana caselaw, that we would refuse to revise an employment contract "beyond the reach of the blue pencil doctrine even where the contract purports to give the court that authority." *AL-KO Axis, Inc. v. Revelino*, No. 3:13-CV-1002 JD, 2013 WL 12309288, at *6 (N.D. Ind. Oct. 25, 2013); *see also Mero*, 277 F. Supp. 2d at 921, 929–930.

Consistent with these cases, we conclude that parties may not, by "adding a magic phrase" like the Kolbe Agreement's reformation clause, "delegate to the courts the task of drafting reasonable agreements." *Mero*, 277 F. Supp. 2d at 929. While reformation clauses might encourage an interpreting court to blue-pencil an agreement, they do not allow a court to overstep the bounds of Indiana's blue pencil doctrine by adding terms. *See MacGill v. Reid*, 850 N.E.2d 926, 933 n.4 (Ind. Ct. App. 2006) (noting that a noncompetition agreement containing a reformation clause "encourage[d] the use of the 'blue pencil doctrine[]'"). To reason otherwise would spell the end of Indiana's blue pencil doctrine by

---

[2] Even so, the dissent argued that the majority had impermissibly rewritten the agreement by "redrafting the contract provision at issue." *Grider*, 650 N.E.2d at 85 (Staton, J., dissenting). To the extent *Grider* can be read as authorizing courts to add language to an unenforceable noncompetition agreement, we disapprove of it.

encouraging employers to draft obviously overbroad restrictive covenants and to then rely on courts to narrow them just enough to be reasonable. *See Mero*, 277 F. Supp. 2d at 929 (predicting such an outcome). This would frustrate the parties' reasonable expectations, since courts cannot, after the fact, assume what the parties intended when they entered into the agreement. *See Licocci*, 445 N.E.2d at 561; *Grider*, 650 N.E.2d at 85 (Staton, J., dissenting).

We thus find that the blue pencil doctrine applies to the Kolbe Agreement, despite its reformation clause, to bar an interpreting court from adding language to limit the scope of its restrictive covenants. We now determine whether the Kolbe Agreement's unenforceable employee nonsolicitation covenant can be blue-penciled or whether it must be wholly stricken from the preliminary injunction order.

## III. Since the Kolbe Agreement's covenant not to solicit employees cannot be blue-penciled, it cannot be enforced.

The Kolbe's Agreement's employee nonsolicitation covenant provides as follows:

> Employee will not employ, solicit for employment, or advise any other person or entity to employ or solicit for employment, **any individual employed** by Company at the time of Employee's separation from Company employment, or otherwise induce or entice any such employee to leave his/her employment with Company to work for, consult with, provide services to, or lend assistance to any Competing Organization.

As the Court of Appeals correctly held, the covenant, as written, is unreasonably broad because it extends to "any individual employed" by Zimmer—not just to those who "have access to or possess any knowledge that would give a competitor an unfair advantage." *Zimmer*, 123 N.E.3d at 167; *see also Krueger*, 882 N.E.2d at 729 ("In arguing the reasonableness of a

non-competition agreement, the employer must first show that it has a legitimate interest to be protected by the agreement." (citing *Sharvelle*, 836 N.E.2d at 436–37)).

A court can blue-pencil unreasonable provisions from a restrictive covenant if the covenant is clearly divisible into parts and if a reasonable restriction remains to be enforced after the unreasonable portions have been eliminated. But here, the covenant not to solicit "any individual employed" by Zimmer cannot be blue-penciled because there is no language that we could excise to render its scope reasonable. Thus, the overbroad covenant is void and unenforceable.

## Conclusion

Indiana's "blue pencil doctrine" is really an eraser—providing that reviewing courts may delete, but not add, language to revise unreasonable restrictive covenants. And parties to noncompetition agreements cannot use a reformation clause to contract around this principle. Because the Kolbe Agreement's unenforceable covenant not to solicit Zimmer employees cannot be reformed, we vacate section 1(e) of the trial court's preliminary injunction order—which purports to enforce that covenant—and remand.

David, Massa, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANTS

Robert G. Devetski

Peter D. Hamann

Barnes & Thornburg LLP

South Bend, Indiana

Mark J. Crandley

Barnes & Thornburg LLP

Indianapolis, Indiana

Gerald E. Burns

Patrick D. Doran

Buchanan Ingersoll & Rooney, PC

Philadelphia, Pennsylvania

ATTORNEYS FOR APPELLEES

Joshua B. Fleming

Lucy R. Dollens

Quarles & Brady LLP

Indianapolis, Indiana